SANFORD STARRETT *vs.* ROCKLAND FIRE AND MARINE INSURANCE COMPANY.

Knox, 1875.—May 6, 1876.

*Corporations. Stockholder.*

A written agreement to take and secure a certain number of shares in an insurance company before its organization is a proposal to take that number of shares, and does not make the subscribers thereto stockholders in such company, unless such proposal has been accepted by said company after it has been organized.

The return of the name of such a subscriber to the secretary of state, as a stockholder, by the secretary of the company, under a mistake of fact, and the entry of it upon the stock ledger do not constitute an acceptance of his proposal.

Such acts of the secretary are open to explanation and control by parol proof that they were committed under a mistake of fact in respect to any particular person whose name has been thus returned and entered.

ON REPORT.

ASSUMPSIT for $2,975, dividends on five shares of the capital stock of the defendant corporation.

Plea, the general issue.

The defendant company was chartered February 7, 1852, to continue twenty years. The charter provides that the capital

stock exclusive of premium notes and profits shall be $50,000, of which fifty per cent shall be paid within ninety days after publication of this act in some newspaper printed in Rockland, and the remaining fifty per cent within two years after the payment of the first installment.

The plaintiff before the organization of the company, subscribed to the amount of $500 in a book of original subscriptions to its capital stock, the caption whereof is as follows: "Rockland, February 13, 1852. We promise to take and secure, according to the provisions of the charter the amount set against our names in the capital stock of the Rockland Marine and Fire Insurance Company, situated at Rockland."

The company organized in March, 1872. The notice was published in the Rockland Gazette, March 26, 1872.

None of the subscriptions were paid in money. The parties who took the stock gave negotiable notes on demand with interest secured by collateral; and certificates of stock were issued as these payments were made. The plaintiff made no payments towards his subscription. There was evidence tending to show that he was called upon to pay for his stock by the president of the company some considerable time after the organization and that he declined to do it.

The plaintiff put in evidence a list in a book of the company headed, "Amount stock taken and secured," in which his name appears for five shares; also a list of the stockholders of the company certified by the secretary of state, dated January 2, 1854, in which his name appears.

The evidence tended to show that for many years the company was in a losing way; that in 1864, the stock began to appreciate and have a market value, and that in 1869, and thereafter large sums were divided; that the plaintiff claimed his shares and his claim was disallowed by the defendants. The facts are more fully stated in the opinion. The case was made law on report.

*A. S. Rice & O. G. Hall,* for the plaintiff.

I. In joint stock business corporations, membership is originally constituted by subscription to the shares in the capital stock, 1 Red. on Rail., p. 69; each subscription being an independent under-

taking ; *C. & P. R. R.* v. *Bailey*, 24 Vt., 465, or a several contract, *Price* v. *G. R. & I. R. R.*, 18 Ind., 137 ; *E. & N. Y. C. R. R.* v. *Patrick*, 2 Keyes, (N. Y.,) 256.

The subscription in the case at bar is by an agreement "to take and secure according to the provisions of the charter the amount set against our names in the capital stock," &c. The charter provides for payment in money at stipulated times. The promise is therefore, equivalent to a promise to pay when required by the terms of the charter. It is more explicit than the promise to "take and fill," which was held to be sufficient in *Bangor Bridge Co.* v. *McMahon*, 10 Maine, 478.

It is no defect in the subscription that the corporation was not organized until after the subscription was made. *D. & N. R. R. Co.* v. *Wilson*, 22 Conn., 435.

So far as the subscriber is concerned, his status as a stockholder is determined by the act of subscription. *Chester Glass Co.* v. *Dewey*, 16 Mass., 100. When the subscription has been accepted by the corporation the proprietorship of the subscriber becomes absolute. *Pen. R. R. Co.* v. *Dummer*, 40 Maine, 172. Entry in the stock books, demand of payment of subscription, or commencement of suit for its recovery, furnish sufficient evidence of acceptance. *Pen. R. R. Co.* v. *Dummer*, 40 Maine, 172. *Same* v. *White*, 41 Maine, 512. *K. & P. R. R.* v. *Jarvis*, 34 Maine, 360. *Thompson* v. *Woodhull*, 1 Sandf., Ch. 411. *Richmondville Union Seminary* v. *McDonald*, 34 N. Y., 379.

Evidence of acceptance in this case is by entry on stock books, returns to secretary of state, and demand of payment.

Payment by the subscriber is not necessary to constitute proprietorship of stock. The foregoing cases in the 10th, 34th, and 40th Maine reports were to compel payment from delinquent proprietors. R. S., c. 49, § 6, gives a specific and direct action against the same class of persons to creditors of insolvent corporations. One who subscribes for stock is a stockholder, within the provisions of a charter making stockholders individually liable for debts, though he has paid nothing on his subscription. *Spear* v. *Crawford*, 14 Wend., 20. If a stockholder has not paid his subscription in full he owes for what is unpaid, but is none the less a

stockholder. *Curry* v. *Scott*, 54 Penn. St. R., 270. A subscriber to the stock of an incorporated company, whose subscription is received by the directors, and regular certificates thereof issued, is a *bona fide* stockholder, although he has paid nothing for his share. Angell & Ames on Corp., c. 4, § 13, note 1, and cases there cited.

One may have all the rights and be liable to all the duties of a member without a certificate. *Agricultural Bank* v. *Burr*, 24 Maine, 256. When a corporation has proceeded regularly to ascertain its coporators, and the owners of shares in its capital stock, and has entered them in its records, all parties become *prima facie* entitled to the rights thus secured to them. *Pen. R. R. Co.* v. *Dummer*, 40 Maine, p. 174. *Same* v. *White*, 41 Maine, 512. In the absence of any provision or by-law, the delivery of certificates of stock to subscribers is unnecessary. The stock is issued fully and effectually by placing it in the name of the subscriber in the books. *Thompson* v. *Woodhull*, 1 Sandf., Ch. 411.

II. The acts of Farwell in making up the stock list are binding upon the company. The whole business was left in his charge and he accepted such subscriptions as he saw fit.

III. It is made the duty of the secretary, by law, to keep a true list of the stockholders, and of the number of shares held by each, and record every transfer of shares in a book kept for that purpose, R. S., c. 49, § 3, to make annual returns to the secretary of state of the names of all the stockholders, their residence, the amount of stock owned by each, and the whole amount of stock paid in, R. S., c. 46, § 22, and on demand to furnish any officer legally holding any execution against the company with the names of the stockholders with their places of residence, so far as known, and the amount for which every person is liable. R. S., c. 46, § 29.

The stock books, so made up, are conclusive evidence of the ownership of stock in favor of creditors as against stockholders. *Stanley* v. *Stanley*, 26 Maine, 191.

The name of the plaintiff was regularly entered in the stock books as the proprietor of five shares, and he was annually

returned to the secretary of state up to the year 1864, as their owner. And these records were conclusive evidence of his ownership of the stock, in favor of creditors. *A fortiori* the same evidence should be conclusive in his favor as against the corporation.

IV. The amount to be recovered in this action is the sum of all the dividends, except dividend No. 3, which was paid in stock notes, with interest from February 4, 1874, the date of demand. Reckoned to the last day of the March term in Knox, this amount is $2,944.27.

This places the plaintiff upon an equality with the other stockholders, none of whom had made any payment upon their stock notes. The vote declaring the stock dividend contained a proviso that the president should have the right to reserve said dividend in all cases where the stockholders were indebted to the company.

*J. Baker & T. P. Pierce*, for the defendants.

DICKERSON, J. Assumpsit for $2,975, money had and received with the specification annexed, that the plaintiff claims to recover the dividends on five shares of the capital stock of the defendant company of which he is the owner.

The principal question to be determined is, whether the plaintiff was the owner of the stock as alleged in the specifications. If he was, it must have been by virtue of a contract entered into between him and the defendant company. Whether such a contract was made depends upon the acts of the parties. The only act the plaintiff ever performed, tending to make him the owner of the shares in question was to sign the following memorandum, to wit, "Rockland, February 13, 1852. We promise to take and secure according to the provisions of the charter, the amount set against our names in the capital stock of the Rockland Marine and Fire Insurance Company, situated at Rockland." This paper was signed before the charter was accepted by the corporators, and before the company was organized. The plaintiff was not even one of the corporators named in the act of incorporation. There was at that time no party in being, competent to sell or to contract to sell to the plaintiff the stock in question. It was impossible for the mind of the plaintiff, and the mind of the defendants

to meet and agree to the purchase and sale of any stock in the defendant company. The paper signed by the plaintiff was simply a proposal to take so many shares, a mere *nudum pactum.* Without accepting the plaintiff's proposal the company had no authority to compel the plaintiff to take the stock, nor had he any to compel the company to give him a certificate of stock upon tender of payment or security therefor. *Pen. R. R. Company* v. *Dummer,* 40 Maine, 172. *New Bedford & Bridgewater Turnpike Corporation* v. *Adams,* 8 Mass., 138. *Essex Turnpike Corporation* v. *Collins,* 8 Mass., 292. *Perkins* v. *Button Hole & Embroidery Machine Company,* 12 Allen, 273. *Lexington & W. Cambridge R. R. Company* v. *Chandler,* 13 Metc., 311.

The counsel for the plaintiff contend that the entry of the plaintiff's name in the stock ledger, by the secretary of the company, as owner of five shares, and his return of the same to the secretary of state, together with the call of the president upon the plaintiff to secure the stock he agreed to take, constitute an acceptance of the plaintiff's offer to take stock, made before the company was organized. The duty of keeping a true list of the stockholders, and of the number of shares held by each, and also, that of making a return of the same to the secretary of state are enjoined by the statute ; no vote of the directors was necessary to authorize the secretary to perform these acts. R. S., c. 56, § 22, and c. 49, § 3. The amount of the capital stock of the company was limited to $50,000. It was necessary that that amount of stock should be taken and secured before the company could commence doing business. It appears that Hon. N. A. Farwell was the active promoter of the enterprise, and that he had the general care and management of the business of the company, discharging the duties of president and secretary, until January, 1853, when Maynard Sumner, esq., was chosen secretary. From the paper of February 13, 1852, Mr Farwell prepared a list entitled, "amount stock taken and secured," which contained the name of the plaintiff for five shares. This was the only list of stockholders that the company had previous to the election of a secretary. Upon the election of a secretary, Mr. Farwell delivered over to him this list together with the books and papers of

the company. This list was delivered and received, and kept as a schedule of the stockholders of the company. From it the secretary made his first returns to the secretary of state. Subsequently in about the year 1855, the secretary transcribed this list into a stock ledger, from which he afterwards made his returns, taking care to note the changes rendered necessary by the transfer of stock.

In view of these facts the acts of the secretary are to be regarded as the action of the company. The list headed "amount stock taken and secured," officially prepared by the president of the company was deposited in its archives, and was the only evidence the company had to show who were stockholders, when the secretary was installed in office. The entry of this list in a stock ledger in order to preserve it and facilitate its use was incident to the duties of the secretary, and the returns to the secretary of state made therefrom were required by law. Acts of the officers of a company done in the line of their official duty, or under the sanction of law, are as effectually the acts of the company, as if they were done by authority of a vote of its directors. By the preparation of the list of "amount of stock taken and secured," its entry upon the stock ledger, and their returns to the secretary of state the company recognized and held the plaintiff out to the world as a stockholder, and thereby accepted his proposal to take and secure five shares of their capital stock, unless these acts are explained and controlled.

The defendants seek to escape this result by showing that the name of the plaintiff was included in these several documents by mistake of fact. To this the plaintiff replies that the defendants are estopped to show such mistake. In order to constitute an estoppel by these acts of the officers of the company it must appear that the plaintiff has thereby been induced to change his position. Big. on Estoppels, 369. The conduct of the plaintiff was not changed in consequence of these acts. He predicated no action upon them, assumed no liabilities, made no payments, nor was he in any way prejudiced thereby. There is therefore no estoppel, and the acts in question are open to explanation and control.

Mr. Farwell testifies that he committed an error in making up

the list headed, "amount stock taken and secured," and there is no question but he did. That list purports to show the amount of stock taken and secured, and the names of the stockholders. In it the plaintiff's name is put down for five shares. There is no pretense that he ever "took and secured" any stock. In respect to him the list is erroneous; it falsifies the caption. The secretary testifies that his returns to the secretary of state, and the entry of the plaintiff's name upon the stock ledger were predicated upon the veracity of the list of "amount stock taken and secured." These were, therefore, likewise erroneous in respect to the plaintiff.

It is obvious that in all these instances the plaintiff's name as a stockholder was inserted by mistake of fact. His written proposal was to "take and secure five shares of the capital stock." He never did that, and yet these acts of the officers unexplained placed him upon the same footing, as a stockholder with those who had "taken and secured stock." We have seen that the plaintiff's offer to take and secure stock did not *ipso facto* make him a stockholder, neither did the recognition of him as such by the president and secretary, under a mistake of fact make him one. Their doings on this matter were not the voluntary and intelligent acts of the defendants, and cannot be regarded as an acceptance of the plaintiff's offer, or as a waiver of his compliance with its terms. The minds of the parties never in fact met and agreed upon the plaintiff's offer.

We attach no special significance to the demand upon the plaintiff to take and secure the five shares in controversy made by the president, since the evidence that proves the demand shows, also, that the plaintiff refused to do so, thereby repudiating his offer, and refusing to become a stockholder. It is by no means remarkable that the mistake was not discovered at an earlier day, as it was at that time that the stock began to have an appreciable value. Indeed, no dividends were declared until some five years after the discovery of the mistake. Nor does it operate to the prejudice of the company or to discredit the testimony of the president, and secretary, that upon the discovery and correction of the mistake, the secretary credited the five shares to Mr. Farwell's account, as this was done in pursuance of the directions of Mr. Farwell, to

charge all the stock to him that was not secured, given long before the success of the company was assured. Those directions thus given, are entirely consistent with the good faith of Mr. Farwell, and simply show his confidence in the ultimate success of the company, and his purpose to make that possible.

In order to maintain this action it is incumbent upon the plaintiff to show that he was the owner of the five shares claimed by him during the time the dividends were declared. This he has failed to do. Indeed the evidence proves that all the capital stock of the company was then owned and held by other persons, *Goodwin* v. *Hardy*, 57 Maine, 143.

Several other questions are raised and discussed by the respective counsel, but their determination is rendered unnecessary by the view we have taken of the case.

*Plaintiff nonsuit.*
*Judgment for defendants.*

APPLETON, C. J., WALTON, BARROWS and DANFORTH, JJ., concurred.

LIBBEY, J., having been consulted, did not sit.