HUDSON REAL ESTATE COMPANY *vs.* HERMAN C. TOWER
& another.

Middlesex. January 9, 10, 1894. — March 2, 1894.

Present: FIELD, C. J., ALLEN, MORTON, & BARKER, JJ.

*Subscription to Stock — Withdrawal of Subscription — Sufficiency of Notification of Withdrawal — Evidence.*

If A., who, as one of several associates, has subscribed for shares of stock in a corporation to be thereafter organized, gives oral notice of the withdrawal of his subscription, during an interview between them, to B., who is acting as the representative of the associates, and who, at a meeting two days previously for the organization of the corporation, has been chosen president, the choice of officers being by the laws of the State in which the corporation is organized a necessary preliminary to the creation of the corporation, such notification of withdrawal is sufficient, although the association does not come into legal existence as a fully formed corporation until a later date.

A subscription for shares of stock in a corporation to be thereafter organized may be withdrawn before the organization of the corporation, although the associates have taken action on the strength of such subscription.

In an action by a corporation to recover the amount of a subscription for shares of stock therein, claimed by the defendant to have been withdrawn before the corporation was organized, the conversation between the solicitor of the subscription and the defendant when he made his subscription, the statements made by the solicitor at a meeting of the associates in regard to the nature of the defendant's subscription, a conversation between the defendant and the representative of the associates tending to show a revocation of the subscription if it was voted by them to do a certain act, and the subsequent passing of such a vote, are admissible in evidence for the purpose of showing the withdrawal of the defendant's subscription before the organization of the corporation ; and, being limited to that purpose by the judge in his instructions to the jury, the plaintiff has no ground of exception.

CONTRACT, to recover the amount of a subscription by the defendants, as copartners, for ten shares of stock in the plaintiff corporation. After the former decision, reported 156 Mass. 82, the case was tried in the Superior Court, before *Bond*, J.

The jury returned a verdict for the defendants; and the plaintiff alleged exceptions. The facts sufficiently appear in the opinion.

*J. T. Joslin,* (*R. E. Joslin* with him,) for the plaintiff.

*J. E. Cotter & H. S. Ormsby,* for the defendants.

ALLEN, J.   It was heretofore decided in this case, that until the organization of the corporation the defendants' subscription was a mere proposition or offer which might be withdrawn, like any other unaccepted offer.  156 Mass. 82.  The principal question which the plaintiff now seeks to present is, whether, upon the evidence and under the ruling of the court, the jury were warranted in finding a legal withdrawal or revocation of the subscription.

The only withdrawal or revocation relied on occurred in an interview between one of the defendants and Henry Tower, on August 31st, 1889, and in view of the verdict the only question left is whether a notification of withdrawal given orally to Henry Tower was sufficient.

It will be necessary to state the situation of the parties.  The contract declared on is given below.*

The corporation was organized under the laws of Maine.  The meeting for the organization was held at Portland, Maine, August 29th, 1889, at which time the articles of agreement, having been signed, were presented, by-laws were adopted, and officers were chosen.  The necessary papers were then prepared as required by law, and were approved by the Attorney General of Maine on September 5th, were recorded on September 6th,

---

* " We, the undersigned, hereby subscribe for and agree to purchase the number of shares set against our respective names of the capital stock in a corporation to be organized under the laws of such State as a committee hereafter to be appointed from the subscribers shall determine, said shares of capital stock to be of the par value of fifty dollars, and the capital stock of said corporation to be not less than twenty-five thousand dollars, said corporation to be organized for the purpose of purchasing land, and erecting a shoe-shop thereon with the necessary appliances connected therewith, in the town of Hudson, to be rented when completed to H. H. Mawhinney & Co. for a term of ten years at a rental of seven per cent per annum on the cost of the plant when completed.  Said corporation to be organized as soon as may be, and in advance thereof an agreement in writing between a committee of the subscribers, in behalf of all, with said H. H. Mawhinney & Co. to be executed binding the latter to take said plant for the period and at the terms stated, and on the organization of said corporation to be re-executed to bind both parties.  And the subscribers hereto hereby bind themselves severally to pay for said stock to the treasurer of said corporation in the way and manner that the corporation when organized shall determine.  And we severally agree that one seal shall be the seal of each.

" Hudson, August 7, 1889."

and were received and filed in the office of the Secretary of the State on September 7th, 1889. It was agreed at the argument that, under the laws of Maine, the legal existence of the corporation as a corporation began on September 7th.

On the 31st of August, Henry Tower's position was as follows. It must be assumed, though the bill of exceptions does not in express terms so state, that he was one of the subscribers. One of the plaintiff's requests for instructions assumes that there was a contract of the firm above referred to " with Henry Tower and others in behalf of the associates for the purchase of land and building a shoe-shop thereon, dated August 19, 1889." This contract, being thus referred to by the plaintiff as an undisputed fact, must be taken to show that Henry Tower was acting as the person first named on the committee contemplated by the subscription paper, to obtain an agreement in writing binding said firm to take a lease of the premises. On August 29th, at a meeting which apparently was the first formal step in the organization of the corporation, he was chosen president. By the statutes of Maine, which it was agreed we should refer to, the choice of officers is a necessary preliminary to the creation of the corporation. Rev. Sts. of Maine of 1883, c. 48, §§ 17–19.

It is also obvious that on August 31st he was, in the opinion of the jury, acting as an officer in behalf of the associates, and not merely on account of his personal interest as one of the subscribers. Such is the fair result of the instructions taken as a whole. The judge in the course of his charge called the jury's attention to this distinction by saying: " If Henry Tower was one of the officers of the associates for the purpose of managing their business, it would not be necessary that any other notice should be given than what was given to him ; but if he went there simply as being interested, not acting as an officer, . . . it may be that he was not an officer so that he would be a party authorized to receive any notice of withdrawal, and if he was not, then it would be necessary for that fact to be communicated to the meeting." It being pointed out to the judge at the close of the charge, that the plaintiff's records showed that at the meeting on August 29th Henry Tower was chosen president, he further instructed the jury, that if he had been so chosen president, and if the defendants notified him distinctly that, if a certain event

should happen with reference to the change of the policy of the corporation as to mortgaging its property, they would no longer be in the association and would not pay a cent on their subscription, that would be a sufficient notification of their withdrawal if the event did happen. The undisputed testimony, so far as it is recited or disclosed in the bill of exceptions, goes to show that Henry Tower in that interview was acting in a representative capacity, and not merely on his own personal account. The plaintiff's requests for instructions raised no question on this point, but asked the court to rule that, "in order to constitute a valid withdrawal, the defendants must do some act or make some unequivocal or unconditional statement to the proper officer or officers of the associates which shall amount to a public withdrawal from said contract." The instructions were given with reference to this request, and, as we understand them, they amounted to this, that Mr. Tower having been chosen as president, and acting for the associates, was on August 31st a proper officer to be notified by the defendants of their withdrawal.

We think this instruction was right. No instruction was asked at the trial that, in order to withdraw from the associates, notice must be given to all of them individually, or at a meeting of the associates. The plaintiff only contended that the notice must be given to the proper officer or officers; and it would plainly be impracticable to require a direct personal notice to them all. The right to withdraw would be nugatory if this were necessary. A subscriber who has a right to withdraw may not know, or have the means of knowing, who all of his associates are, or where they live. If he does know, they may be many in number, and widely scattered; or some of them may be away on a journey. No general meeting of them may be called which he can attend without leaving the State. He need not wait for a meeting before giving his notice of withdrawal. It was indeed held in an early case in England, that all of the other subscribers must not only have notice, but must actually consent, before one of the subscribers could withdraw. *Kidwelly Canal Co.* v. *Raby*, 2 Price, 93. But now, in England as well as here, no such consent is necessary. If every one of the other subscribers should object, yet it is the right of a subscriber to withdraw before the corporation is formed. It is

merely a question of giving due notice of his withdrawal. And in England it is not intimated in any modern case, so far as our examination has gone, that notice must be given to all the other subscribers, or at a meeting of subscribers. The retraction has usually been made to the same persons to whom the application for shares was made. See Lindl. Part. (4th ed.) 99–105 and numerous cases cited.

In this country no case has been cited, and we have found none, discussing the question what notice of withdrawal will be sufficient. In some cases, no attempt to withdraw was made till after the corporation was formed. See, for examples, *International Fair & Exposition Association* v. *Walker*, 83 Mich. 386; *Richelieu Hotel Co.* v. *International Military Encampment Co.* 140 Ill. 248; *Ashuelot Boot & Shoe Co.* v. *Hoit*, 56 N. H. 548; *Shober* v. *Lancaster County Park Association*, 68 Penn. St. 429. It is said in *Cartwright* v. *Dickinson*, 88 Tenn. 476, "Before the organization of the corporation and acceptance of the subscription . . . the promoters might, perhaps, agree to release a subscriber by substituting other names for his." This goes on the idea that the subscriber has not an absolute right to withdraw, and that somebody's assent is necessary. In *Plank's Tavern Co.* v. *Burkhard*, 87 Mich. 182, the subscriber apparently made known his refusal to the persons who brought a second paper to be signed by him, and it was held to be sufficient, but the proper mode of giving such notice is not discussed, and the court incidentally remarked that "the corporators well knew when the company was organized . . . that the defendants expressly repudiated the whole arrangement." It is held that the death of a subscriber before the formation of the corporation is a revocation of a subscription. *Phipps* v. *Jones*, 20 Penn. St. 260. *Wallace* v. *Townsend*, 43 Ohio St. 537. *Pratt* v. *Elgin Baptist Society*, 93 Ill. 475. *Sedalia, Warsaw, & Southern Railway* v. *Wilkerson*, 83 Mo. 235. Insanity is also held to be a revocation in *Beach* v. *First Methodist Episcopal Church*, 96 Ill. 177. Death is a public fact, of which all the world must take notice, though the above decisions were not put on that ground; *Marlett* v. *Jackman*, 3 Allen, 287; but insanity is not. In most of the cases where the right of withdrawal of a subscription has been held to exist, there is nothing to show that all the other sub-

scribers were notified, and there has been no question as to the sufficiency of the mode in which the withdrawal was made. See, in addition to the cases above cited, *Auburn Bolt & Nut Works* v. *Shultz*, 143 Penn. St. 256; *Muncy Traction Engine Co.* v. *Green*, 143 Penn. St. 269; *Garrett* v. *Dillsburg & Mechanicsburg Railroad*, 78 Penn. St. 465; *Strasburg Railroad* v. *Echternacht*, 21 Penn. St. 220. An offer of reward made by public proclamation may be withdrawn in the same manner, and the fact that a claimant of the reward was ignorant of the withdrawal of the offer is immaterial. *Shuey* v. *United States*, 92 U. S. 73. And if not withdrawn by any express notice, a withdrawal is implied after the lapse of a considerable time. *Loring* v. *Boston*, 7 Met. 409.

In the present case, it seems to us that Henry Tower was a proper person to whom a withdrawing subscriber might give notice of his withdrawal. So far as appears in the bill of exceptions, there was no other officer or person who so well or fully represented the subscribers at large. He was at the head of the principal committee, and in addition to this he had been selected and chosen as president, and he was acting in behalf of the subscribers. There is nothing to show that the chairman of the meetings had any duties except merely as presiding officer at the meetings. Taking the case as it stood, and in view of the requests for instructions which implied that the notice of withdrawal would of course be given to some officer, and of the fact that nobody else was suggested as the proper officer or person to receive the notice, the ruling of the court was right, that notice to him was sufficient; and the fact that the association did not come into legal existence as a fully formed corporation till a later date does not render the notice to him insufficient, under the circumstances.

The plaintiff requested a ruling that the defendants could not withdraw after the associates had taken action on the strength of their subscription. This was rightly refused, as was held in the former decision.

The plaintiff also asked an instruction that the defendants' offer was not conditional, and could not be made so by oral testimony. This instruction was given.

The evidence to which the plaintiff objected was properly

admitted for the purpose for which it was received,* and the instructions to the jury carefully limited it to that purpose, and confined the attention of the jury to the single point of the defendants' withdrawal of their subscription.

*Exceptions overruled.*

---

* The evidence in question was the conversation between the solicitor of the subscription and the defendant Herman C. Tower when he made the subscription; the statements made by the solicitor at a meeting of the associates on August 14, 1889, in regard to the nature of the defendants' subscription; the conversation between Herman C. Tower and Henry Tower on August 31, 1889, tending to show a revocation of the subscription if the associates voted to place a mortgage on the property; and the passing of such a vote at a meeting of the associates on August 31. The judge admitted the evidence solely for the purpose of showing a withdrawal of their subscription by the defendants before the corporation was organized.