BRYANT'S POND STEAM MILL COMPANY
*vs.*
JOHN G. FELT.

Oxford.    Opinion February 23, 1895.

*Corporation.    Subscription to Stock.    Withdrawal.*

A subscriber to the capital stock of an unorganized business corporation has a right to withdraw from the enterprise, provided he exercises the right before the corporation is organized and his subscription is accepted. Such a subscription is not a completed contract.

Such rule, however, does not apply to voluntary and gratuitous subscriptions to public or charitable objects, which, when accepted and acted upon, become binding; nor to subscription papers so worded as to become binding contracts between the subscribers themselves.

ON REPORT.

This was an action of assumpsit brought to recover of the defendant the sum of two hundred dollars as appeared by his alleged subscription upon an original subscription book, and upon the outer cover of which was the following writing, "Subscription for a steam mill to be erected at or near Bryant's Pond." The original agreement was as follows:

"We, the undersigned, hereby agree to pay for the number of shares set opposite our names, said shares to be ten dollars each, and non-assessable, for the purpose of erecting suitable buildings, with steam power, for the manufacturing of the various kinds of wood to be used in the contract of one C. H. Adams, he paying three per cent annually as rent on all money so paid, said monies to be paid when needed for the purpose above named, providing the town will abate taxes on said buildings and stock for the term of ten years."

Plea, general issue and the following brief statement:—

And for a brief statement of special matter of defense, to be used under the general issue pleaded, the defendant further says: that said defendant never subscribed for nor promised to pay for any shares in the said Bryant's Pond Steam Mill Company; that the signature of said defendant was procured and affixed to said paper declared on, if at all, on Sunday, and whatever contract was made, if any, was made on Sunday, and therefore void; that subsequent to the time his said name was affixed to said paper and prior to the commencement of this suit and prior to the organization of this company this defendant revoked said subscription and notified the plaintiff and the solicitors for said stock that he should not accept the same, and requested his name stricken from the list of subscribers; that no person is named in said subscription paper as payee, and no contract was ever entered into with any person or persons; that no sum is named in said paper declared upon as a limit to the amount to be raised and is indefinite and uncertain; that a

sufficient sum was not raised or subscribed for erecting buildings with steam power for the manufacturing of the various kinds of wood, as alleged, and plaintiff was obliged to and did mortagage the property to complete the amount; that at the time the plaintiff company pretended to organize, this defendant was not recognized as a subscriber, did not participate in the organization, and is not named therein as one of the subscribers to the stock of the same; that there were conditions attached to said subscription paper which are essential to be performed, and which have never been performed on the part of this plaintiff or any other parties interested in said subscription, or on the part of the town of Woodstock; that said paper, purporting to be a subscription of shares of stock is without consideration and void.

*J. P. Swasey*, for plaintiff.

An agreement whereby the signers, for a purpose of forming a corporation and providing it with funds, declared that they subscribed for stock to the amount set opposite their names, is valid; and upon the formation of the corporation, and its acceptance of the agreement, each of the subscribers becomes bound to pay for the number of shares subscribed by him.

A corporation may sustain an action for subscriptions made to its stock before it was formed, though it is not named as a promisee in the agreement to subscribe. *Swain* v. *Hill*, 30 Mo. App. 436; *Comstock* v. *Howard*, 15 Mich. 237; *Marysville Electric Light & Power Co.* v. *Johnson*, 27 Am. State Rep. p. 215; *Griswold* v. *Trustees*, 26 Ill. 41; *Fulton* v. *Sterling Land Investment Co.* 47 Kansas, 621.

Subscriptions by a number of persons to stock of a corporation to be thereafter formed by them is, first: a contract between the subscribers themselves, to become stockholders ·without further act on their part immediately upon the formation of the corporation, and as such is binding and irrevocable from the date of the subscription, unless cancelled by consent of all the subscribers before acceptance by the corporation, and second: it is in the nature of a continuing offer to the proposed corporation, which upon acceptance by it after its formation, becomes as to each subscriber, a contract between him and the corporation.

*Minneapolis Threshing Machine Co.* v. *Davis*, 27 Am. State Rep. p. 701; *Hudson Real Est. Co.* v. *Tower*, 156 Mass. p. 82.

In the last case cited, the corporation itself had notice upon which the defendant claimed to withdraw, and after notice by direct vote violated the condition upon which his subscription was made.

A subscriber to the stock of a corporation in process of organization can neither withdraw nor be released by directors without consent of all the subscribers. *Hughes* v. *Antietam Mfg. Co.* 34 Md. p. 316.

A subscription of money to be paid to a corporation not yet existing, is enforceable by it after it comes into existence. Such a subscription is in the nature of a continuing offer, which ripens into a binding obligation when the corporation, being fully organized, accepts such offer.

Notice of the acceptance by a corporation of a subscription for its benefit, made before it was organized, is not necessary. Such acceptance may be inferred from the conduct of the corporation in retaining the subscription paper in its possession, and expending large sums of money on the face of it.

When money is expended, labor bestowed, and materials furnished on the faith of a subscription paper, a consideration sufficient to sustain it, exists, and it becomes irrevocable. *Richelieu Hotel Co.* v. *International Military Encampment Co.* 33 Am. Rep. 234.

The agreement was for a certain number of shares. *Skowhegan, &c. R. R. Co.* v. *Kinsman*, 77 Maine, 370, and cases cited.

*J. S. Wright*, for defendant.

SITTING : PETERS, C. J., WALTON, EMERY, HASKELL, WHITEHOUSE, WISWELL, JJ.

WALTON, J. The only question we find it necessary to consider is whether a subscriber to the capital stock of an unorganized corporation has a right to withdraw from the enterprise, provided he exercises the right before the corporation is organized and his subscription is accepted. We think he has. Such a subscription is not a completed contract. It takes two

parties to make a contract. A non-existing corporation can no more make a contract for the sale of its stock than an unbegotten child can make a contract for the purchase of it.

The right of subscribers to the capital stock of a proposed corporation to withdraw their subscriptions at any time before the organization of the corporation is completed has been affirmed in several recent and well considered opinions. The right rests upon the impregnable ground of the legal impossibility of completing a contract between two parties only one of which is in existence. There can be no meeting of the minds of the parties. There can be no acceptance of the subscriber's proposition to become a stockholder. There can be no mutuality of rights or obligations. There can be no consideration for the subscriber's promise. As said in one of our own decisions, it is a mere *nudum pactum*,—a promise without a promisee,—a contractor without a contractee. In fact, every element of a binding contract is wanting. If the subscriber's promise to take and pay for shares remains unrevoked till the organization of the proposed corporation is effected, and his promise has been accepted, then we have all the elements of a valid contract. Competent parties. Mutuality of duties and obligations. A valid consideration, the promise of one party being a sufficient consideration for the promise of the other. A promisee as well as a promisor. A contractee as well as a contractor. In fact, all the elements of a valid contract are present, and the subscription has become binding upon both of the parties. But, till the corporation has come into existence, all these elements are necessarily wanting, and the subscriber's promise amounts to no more than an offer, which, like all mere offers, may be withdrawn at any time before acceptance. When accepted, it becomes binding. Till accepted, it remains revocable. This conclusion is sustained by reason and authority.

In *Starrett* v. *Rockland Co.* 65 Maine, 374, the plaintiff sought to recover a portion of the dividends of a successful insurance company. He had subscribed for five shares of the stock before the organization of the company was effected; but the evidence of acceptance of his subscription by the corporation after its organization was not satisfactory; and the court held

that without such acceptance there was no completed or binding contract; that the minds of the parties never met; that the plaintiff's subscription, being made before the corporation came into existence, amounted to no more than a proposal to take so many shares,—a mere *nudum pactum*,—imposing no obligations and securing no rights.

And in *Carr* v. *Bartlett*, 72 Maine, 120, the right of subscribers to withdraw from such undertakings while they remain inchoate and incomplete is recognized and affirmed.

In *Muncy Traction Engine Co.* v. *Green*, 143 Pa. St., 269; 13 At. Rep. 747, decided in 1888, the defendant had been active in procuring subscribers to the capital stock of a proposed corporation, and had himself subscribed for twenty shares : but he wrote to the chairman of the meeting for the organization of the corporation that, for reasons satisfactory to himself, he withdrew his subscription.   The court ruled that the defendant had a right to withdraw his subscription at any time before the organization of the corporation was completed ; and the jury having found as a matter of fact that the withdrawal was before the organization of the corporation was completed, a verdict for the defendant was affirmed, and judgment rendered thereon.

In *Hudson Real Estate Co.* v. *Tower*, 156 Mass. 82 (1892), the action was founded on a subscription to the capital stock of an unorganized corporation, and the defense was based on an alleged withdrawal of the subscription.   The right to withdraw was controverted.   The court held that at the time when the defendant signed the subscription paper declared on, it was not a contract, for want of a contracting party on the other side ; that while such a subscription may become a contract after the corporation has been organized, still, until the organization is effected, and the subscription is accepted, it is a mere proposition or offer, which may be withdrawn, like any other unaccepted proposition or offer.

It is urged by the counsel for the plaintiff corporation that such subscriptions create binding and enforceable contracts between the subscribers themselves, and are therefore irrevocable,

except with the consent of all the subscribers; and some of the authorities cited by him seem to sustain that view. But we find, on examination, that such views, when expressed, are in most cases mere dicta, and that the cases are very few in which such a doctrine has been acted upon. Reason and the weight of authority are opposed to such a view. Of course, subscription papers may be so worded as to create binding contracts between the subscribers themselves. But we are not now speaking of such subscriptions; or of voluntary and gratuitous subscriptions to public or charitable objects, which, when accepted and acted upon, become binding. We are now speaking only of subscriptions to the capital stock of proposed business corporations. With regard to such subscriptions, we regard it as settled law that they do not become binding upon the subscribers till the corporations have been organized and the subscriptions accepted; and that, till then, the subscribers have a right to revoke their subscriptions. And, in view of the fact that such subscriptions are often obtained by over persuasion, and upon sudden and hasty impulses, we are not prepared to say that the rule of law which allows such a revocation is not founded in wisdom. We think it is.

In the present case, an old man, upwards of eighty years of age, and now dead, was induced to subscribe for twenty shares of stock in a proposed, but not then organized, manufacturing corporation; but after a little reflection, he determined to revoke his subscription and withdraw from the enterprise. He notified the agent of the promoters, through whom his subscription had been obtained, of his determination to withdraw, and requested him to take his name off the subscription paper. And he again sent word by his son to have his name taken off. And notice of his withdrawal, and of his request to have his name taken off of the subscription paper, was given to the other subscribers at one of their meetings, and before the corporation was organized. We think his withdrawal was legal and complete, and that no action to recover the amount of his subscription is maintainable.

Other grounds are urged in defense of the action, but it is unnecessary to consider them.

*Judgment for defendant.*