# Planters & Merchants Independent Packet Co. *v.* Webb.

*Action on Stock Subscription.*

(Decided June 4th, 1908. 46 South. 977.)

1. *Corporations; Stock Subscription; Right to Withdraw before Organization.*—A subscription to a proposed corporation may be withdrawn by the subscriber at any time before the organization of the corporation.

2. *Same; Notice; To Whom Given.*—It is not necessary that notice be given to all the subscribers to the corporate stock, but it is sufficient to give notice to the person having control of the enterprise, and who is solicitor for stock subscription, to erase one's name from the subscription list, to withdraw such subscription; but if, after such direction and after the organization of the corporation, the subscriber recognizes the subscription as being binding, he is bound thereby.

3. *Same; Change of Corporate Name; Effect.*—The organization of the corporation as the Planter's and Merchants Independent Packet Company does not invalidate the subscription although the subscriptions were made to the stock of the Independent Packet Company.

4. *Evidence; Declaration.*—It was not admissible for a subscriber to stock to show a declaration made by him before a meeting to organize the corporation, made in response to an inquiry as to whether he was going to the meeting or not, "No, I am out of it."

5. *Appeal and Error; Adoption of Theory Below.*—Where it appears that the trial proceeded without any objection to the fact that no pleas were filed, or on the theory that proper pleas were filed, this court on appeal will consider the case on the same theory, although the record sent to this court discloses no pleas filed.

APPEAL from Mobile Circuit Cout.

Heard before Hon. SAMUEL B. BROWNE.

Action by the Planters' & Merchants' Independent Packet Company against B. A. Webb. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

The tendencies of the evidence are sufficiently set forth in the opinion of the court. At the request of defendant the court gave the following charges: "(1) If the jury believe from the evidence that defendant did not subscribe for or agree to pay for stock in the Planters' & Merchants' Independent Packet Company, then the jury must find a verdict for defendant. (2) If the jury believe from the evidence that Webb took no part in the formation of the enterprise which did culminate in the plaintiff company, and that in December, 1903, he told Tunstall to take his name off the paper he had signed, then the jury must find for the defendant."

McAlpine & Robinson, for appellant. Counsel discuss assignments of error, and insist that under the facts in this case, Webb was bound by his subscription, and in support thereof, cite.—*P. & M. Independent Packet Co. v. Webb*, 144 Ala. 666; 1 Cook on Corp. sec. 169, and note; *Pacific Frt. Co. v. Coon*, 107 Cal. 447.

Fitts, Leigh & Leigh, for appellee. Counsel discuss assignments of error, but without citation of authority.

DENSON, J.—This is an action of assumpsit by the Planters' & Merchants' Independent Packet Company, a corporation, against B. A. Webb, to recover $1,000, alleged to be due as a subscription by the defendant (appellee) to the capital stock of the plaintiff. The case was tried before this court at a previous term, and on that appeal it was held that the complaint stated a good cause of action, and a judgment sustaining demurrers

thereto was reversed. On remandment of the cause, trial was had on the merits, resulting in verdict and judgment for the defendant, and the plaintiff again appeals.

The defendant, along with others, signed a subscription list which reads as follows: "We, the undersigned, hereby subscribe for the number of shares of the capital stock of 'Independent Packet Company,' set opposite. our names. Capital $20,000." Defendant subscribed for 10 shares, $1,000; and it is on this subscription the plaintiff bases its right of recovery. The subscription was made in the latter part of the year 1903—in October of that year, as the evidence tends to show. The corporation was not organized until June, 1904, and was organized under the name of "Planters' & Merchants' Independent Packet Company." On the former appeal it was held that "the signing of the subscription paper is an implied promise to pay the subscription," and that an agreement reading as the one here does may be enforced by the corporation subsequently formed.—*Planters' & Merchants', etc., Co. v. Webb*, 144 Ala. 666, 39 South. 562. The soundness of that decision is not brought in question by the present appeal.

The defendant insisted, in the court below, that the venture represented by the subscription list which he signed in the latter part of 1903 was wholly abandoned; next, that, whether it was abandodned or not, he withdrew his subscription some time before the corporation was organized as a corporation. The evidence for the defendant shows that in December, 1903, he instructed Tunstall to take his name off the subscription list, and told him he would have nothing else to do with it (the enterprise). It also tends to show that Tunstall was in control of the subscription list, or that it was in his office, and shows without conflict that Speith, Tunstall,

and defendant originated the scheme to form the corporation—that their names are first on the subscription list, each for 10 shares ($1,000). A further tendency of the evidence is that the venture was abandoned. The plaintiff's evidence tended to show that there was no abandonment of the venture and that the defendant never withdrew his subscription. There is a further tendency in the plaintiff's evidence to show that defendant recognized the binding force of his subscription after the organization of the corporation, and that he was present at the meeting when the corporation was organized.

The affirmative charge, with hypothesis, requested by the plaintiff in writing, was refused by the court. The main proposition underlying this request is whether or not a subscriber to the capital stock of a proposed corporation—an organized corporation—has a right to withdraw and revoke his subscription before the corporation is organized. We shall not undertake a review of the many decisions and text-writers on this subject. In respect to it our own court, speaking through Stone, C. J., has said: "An agreement to take shares in a corporation to be afterwads formed, while it may be, and often is a binding contract, for the breach of which an action may be maintained, is, by force of the mere agreement, in no sense a subscription of stock. Something more must be done before it can be affirmed that the subscription is a completed contract. Until a charter is obtained, or incorporation otherwise perfected, such agreement is a mere offer, or it is an option revocable or not, as the nature of the agreement may determine. The terms of the offer, and the consideration it rests on, may render it binding and irrevocable, or a failure to withdraw such offer, even when in its nature it is revocable, until it has been accepted by actual incorpora-

tion, may so bind the offerer that he cannot afterwards withdraw it. When it rests on a valuable consideration, such as a promise for a promise, then, as a rule, it becomes an irrevocable option, provided incorporation according to the terms of the offer is perfected within a reasonable time. This would constitute the offerer in substance a stockholder. So, if an offer, which has no valuable consideration to rest on, be permitted to stand until it is accepted by incorporation according to its terms, this, it seems, would be an irrevocable subscription of stock."—*Knox v. Childersburg Land Co.*, 86 Ala. 180, 5 South. 578; *Foundry, etc., Co. v. Hall*, 121 Mass. 272; *Katama Land Co. v. Jernegan*, 126 Mass. 156; *Boston, etc., Co. v. Wellington*, 113 Mass. 79; *Russell v. Bristol*, 49 Conn. 251; *Odd Fellows, etc., v. Glazier*, 5 Har. (Del.) 172; *N. H. Cent. R. Co. v. Johnson*, 30 N. H. 390, 64 Am. Dec. 300; *Connecticut, etc., Co. v. Bailey*, 24 Vt. 465, 58 Am. Dec. 181.

In a well-considered opinion, the Supreme Court of Maine, through Walton, J., has aptly expressed what we conceive to be the correct doctrine. It is in accord with our case, supra, and we here transcribe a part of the opinion as delineating our views: "The right of subscribers to the capital stock of a proposed corporation to withdraw their subscriptions at any time before the organization of the corporation is completed has been affirmed in several recent and well-considered opinions. The right rests upon the impregnable ground of the legal impossibility of completing a contract between two parties, only one of which is in existence. There can be no meeting of the minds of the parties. There can be no acceptance of the subscriber's proposition to become a stockholder. There can be no mutuality of rights or obligations. There can be no consideration for the subscriber's promise. * * * If the subscriber's

promise to take and pay for shares remains unrevoked till the organization of the proposed corporation is effected, and his promise has been accepted, then we have all the elements of a valid contract—competent parties, mutuality of duties and obligations, a valid consideration, the promise of one party being a sufficient consideration for the promise of the other, a promisee as well as a promisor, and a contractee as well as a contractor. In fact, all the elements of a valid contract are present, and the subscription has become binding upon both of the parties. But, until the corporation has come into existence, all these elements are necessarily wanting, and the subscriber's promise amounts to no more than an offer, which, like all mere offers, may be withdrawn at any time before acceptance. When accepted, it becomes binding. Till accepted, it remains revocable." After reviewing several cases in support of the conclusion reached, the opinion proceeds: "It is urged by counsel for the plaintiff corporation that such subscriptions create binding and enforceable contracts between the subscribers themselves, and are therefore irrevocable, except with the consent of all the subscribers; and some of the authorities cited seem to sustain that view. But we find, on examination, that such views, when expressed, are in most cases mere dicta, and that the cases are very few in which such a doctrine has been acted upon. Reason and the weight of authority are opposed to such a view. Of course, subscription papers may be so worded as to create binding contracts between the subscribers themselves. But we are not now speaking of such subscriptions, or of voluntary and gratuitous subscriptions to public or charitable objects, which, when accepted and acted upon, become binding. But we are speaking only of subscriptions to the capital stock of proposed business corporations. With regard to such

subscriptions, we regard it as settled law that they do not become binding upon the subscribers till the corporations have been organized and the subscriptions accepted, and that, till then, the subscribers have a right to revoke their subscriptions. And, in view of the fact that such subscriptions are often obtained by overpersuasion, and upon sudden and hasty impulses, we are not prepared to say that the rule of law which allows such a revocation is not founded in wisdom. We think it is."—*Bryant's Pond, etc., Co. v. Felt*, 87 Me. 234, 32 Atl. 888, 33 L. R. A. 593, 47 Am. St. Rep. 323; *Hudson, etc., v. Tower*, 156 Mass. 82, 30 N. E. 465, 32 Am. St. Rep. 434; *Hudson v. Tower*, 161 Mass. 10, 36 N. E. 680, 42 Am. St. Rep. 379. See other authorities cited in 26 Am. & Eng. Ency. Law (2d Ed.) p. 908, in note 4 to the text. In England the same view is maintained.—26 Am. & Eng. Ency. Law (2d Ed.) p. 907. (g), and cases cited to the text.

In the case of *Knox v. Childersburg Land Co., supra,* the substance of the agreement was that several contracting parties each should convey certain designated lands to a named trustee for the purpose of organizing a land company; that upon the formation of the company the trustee was to convey the land to it; that the lands were to be valued, and stock was to be issued to each subscriber, in amount equaling the appraised value of the land contributed by him to the enterprise; that the aggregate of the lands should constitute the capital of the corporation, and the aggregate of the valuations was to constitute and determine the amount of the capital stock. The court there reached the conclusion that, "until incorporation was applied for and obtained, the agreement was, at most, an unaccepted offer," necessarily holding that, in respect to the particular agreement, there was no such thing as a promise for a promise, to form a con-

sideration. This being true in respect to that agree-
ment, the same thing may be said of the subscription in
the case in judgment.—1 Parsons on Contracts (7th
Ed.) p 477, bottom numbers. From what has been said,
we reach the conclusion that the defendant, at any time
before the organization of the corporation, had the right
to withdraw his subscription—to revoke it.

The next question is, how can the right of withdrawal
or revocation be accomplished? It is clear that if, at
the meeting for the formation of the corporation, and
before the organization was perfected, the defendant
had publicly announced his withdrawal and revocation,
this would have been sufficient. That was not done; but
it is contended by the defendant that, in December,
1903, long before the meeting for organization was held
(and, of course, before there was any corporate officers),
and while there were only three or four subscribers on
the list, he notified Tunstall that he was "out of the en-
terprise," and instructed him to erase his name from the
list. There is a tendency in the evidence to show that
Tunstall had possession of the list, or that it was in his
office and under his control at the time, and that he was
one of the leading spirits in the enterprise and solicited
subscriptions thereto. If the jury should find in accord-
ance with these tendencies, the notice to Tunstall, as
contended by defendant, we think, would be sufficient—
that it was not necessary to give notice to all the sub-
scribers.—*Hudson, etc., v. Tower,* 161 Mass. 10, 36 N. E.
680, 42 Am. St. Rep. 379. But if, as the evidence for the
plaintiff tends to show, the defendant, after December,
1903, recognized the subscription as continuing and of
binding force, and such recognition continued until af-
ter the formation of the corporation, then, notwith-
standing the jury might find there was a notification to
Tunstall in December to erase defendant's name from

the list, and if Tunstall did not erase it, the defendant would still be bound on the subscription.

It must follow, from what has been said, that the court committed no error in refusing to plaintiff the general charge requested by it in writing, but committed error in giving charge 2 requested by the defendant. Said charge 2 assumes that notice to Tunstall was sufficient, and, moreover, pretermits the tendency in the evidence to show recognition by the defendant, even after the corporation was organized, of the continuance of his subscription.

Evidently charge 1, given at the request of the defendant, is formulated upon the idea that the difference between "Independent Packet Company," as those words are used in the subscription list, and "Planters' & Merchants' Independent Packet Company," the name given the corporation when it was organized, is material to the extent of rendering the subscription a nullity. If it may be said that the subscription list states the name of the corporation to be organized, still we do not think the addition of the words "Planters' & Merchants' " to that name, upon the organization, should have the effect to destroy the validity of the subscription. Certainly it cannot be said that the subscription should be construed into a contract that the company should bear the name "Independent Packet Company." The purpose, as shown by the evidence, was to form an independent company to operate a boat on the Bigbee river, and the evidence further tends to show the Planters' & Merchants' Independent Packet Company" was the company contemplated and talked of by Tunstall, Speith, and defendant at the time they signed the subscription list. The court is of the opinion that the circuit court committed reversible error in giving the charge.—*Oler v. Baltimore, etc., Co.,* 41 Md. 583.

It is competent to prove the declarations of a person, made immediately upon setting forth on a journey to a particular place, as explanatory of his intention in going.—*Pitts v. Burrough*, 6 Ala. 733; *Kilgore v. Stanley*, 90 Ala. 523, 8 South. 130. But we do not understand that the defendant's declaration, "No, I am out of it," made in response to Dent's query, "Are you going up to the meeting?" falls within this rule, even though it was made just before starting. The court should have excluded it.

We note the further fact that the record fails to disclose any pleas; but the trial seems to have proceeded without any objection on this ground, or on the theory that proper pleas were interposed, and we have considered the case on the same theory."—*Richmond & Danville Railroad Company v. Farmer*, 97 Ala. 141, 12 Southt. 86.

For the erors pointed out, the judgment of the circuit court will be reversed.

Reversed and remanded.

TYSON, C. J., and ANDERSON and McCLELLAN, JJ., concur.