## KING v. HOWETH & CO. *et al.*

No. 3462.    Opinion Filed May 12, 1914.

(140 Pac. 1182.)

1.    **FRAUD—Elements—Burden of Proof.** To substantiate the allegation of fraud, the plaintiff must prove that the defendant made a material representation which was false, and known to be false at the time, and made with the intention that it should be acted upon by the plaintiff, and that plaintiff relied upon such false representation to his injury.

2.    **CORPORATIONS — Stock Subscription—Cancellation for Fraud—Sufficiency of Evidence.** Evidence examined, and held not sufficient to support the allegation of fraud.

3.    **INSURANCE—License of Insurance Company—Prior Acceptance of Stock Subscription.** A domestic life insurance company has the authority to accept a contract of subscription to its capital stock, after its incorporation and before it has been granted a license to commence business under section 3756, Comp. Laws 1909 (Rev. Laws 1910, sec. 3439), such acceptance being necessary in order to show that the corporation has a paid-up capital of not less than $100,000, as provided by section 3765, Comp. Laws 1909 (Rev. Laws 1910, sec. 3448); the acceptance of such subscription to the capital stock being a part of the initial organization of the company, and not the doing of business as contemplated by section 3756, supra.

4.    **CORPORATIONS—Stock Subscription—Right to Cancel.** After a valid subscription to the capital stock of a corporation has been made, either before or after organization of the corporation, and such subscription has been accepted by the organized corporation, there can be no cancellation or withdrawal from the obligation without the consent of the corporation and all the stockholders, except on the grounds of fraud or mistake.

(Syllabus by Rittenhouse, C.)

*Error from Superior Court, Oklahoma County;*
*Edward D. Oldfield, Judge.*

Action by W. M. King against Howeth & Co. and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Lee F. Wilson* and *E. G. Wilson*, for plaintiff in error.

*Ledbetter, Stuart & Bell,* for defendants in error.

Opinion by RITTENHOUSE, C.   On the 1st day of April, 1909, the plaintiff entered into a contract of subscription with Howeth & Co., for the purchase of 250 shares of stock in the Oklahoma National Life Insurance Company.   The contract is as follows:

"The Oklahoma National Life Insurance Company, Oklahoma City, Oklahoma.   Subscription to Capital Stock.   No. 687. Whereas, Howeth & Co., of Oklahoma City, Oklahoma, are promoting the organization of a life insurance company, incorporated in pursuance of the laws of the state of Oklahoma, under the name of the Oklahoma National Life Insurance Company, with an authorized capital stock of five hundred thousand dollars, and a paid-up capital of at least one hundred thousand dollars, and a net surplus of at least fifty thousand dollars, paid-up and free from promotion and organization expenses; and, whereas, by their acceptance of this subscription, said Howeth & Co., agree to endeavor with all reasonable diligence to accomplish on or before December 31, 1909, the organization of said corporation with capital stock and surplus fully paid as aforesaid, they defraying all expenses of promotion and incorporation: Now, therefore, I do hereby subscribe for 250 shares of the par value of ten dollars each, of the capital stock of the said Oklahoma National Life Insurance Company; and I do hereby agree with the said company and with the said Howeth & Co., to pay therefor the sum of five thousand dollars, as follows:   The sum of thirty-seven hundred fifty dollars, I agree to pay to said Oklahoma National Life Insurance Company at any time after July 1, 1909, immediately upon receipt of notice from said Howeth & Co., that the capital stock of said Life Insurance Company has been subscribed in good faith in amounts and at rates netting the company at least one hundred thousand dollars of capital and at least fifty thousand dollars of surplus in the aggregate when paid. The remaining sum of twelve hundred fifty dollars, I agree to pay and do pay concurrently with this subscription, to the said Howeth & Co., in consideration of their agreement hereinbefore recited, and in lieu of any further or other contribution to the ex-

penses of promoting and incorporating said company. Witness my hand, this, the 1st day of April, 1909. W. M. King, M. D."

Plaintiff alleges that the Oklahoma National Life Insurance Company was a corporation, organized under the laws of the state of Oklahoma, and was such corporation. on the 1st day of April, 1909, but had not yet received a license to do an insurance business within the state at such time; that in pursuance of said contract plaintiff paid Howeth & Co. the sum of $1,250 in lieu of any further or other contribution to the expenses of promoting and incorporating said insurance company, and was to pay at any time after July 1, 1909, upon receipt of notice, the sum of $3,750, the same being consideration for 250 shares of stock in said insurance company; that plaintiff demanded a cancellation of the contract of subscription and return of the $1,250 paid to Howeth & Co., as expenses, etc., on the ground of fraud, and alleged that he had withdrawn his subscription prior to the organization of said corporation and acceptance of said contract of subscription.

Stipulation was entered into admitting the execution of subscription to the capital stock of said Oklahoma National Life Insurance Company; the agency of Howeth & Co.; the payment of the $1,250; that plaintiff had demanded of Howeth & Co., prior to bringing suit, the return of the $1,250, and cancellation of the subscription contract; that no license was issued to the Oklahoma National Life Insurance Company at the time of demand; that Howeth & Co., as promoters and agents of the Oklahoma National Life Insurance Company, had secured subscriptions to said capital stock, sufficient to obtain for said company the aggregate sum of $150,000; that at the time of making said subscription contract with Howeth & Co., they represented to plaintiff that said stock was taken and to be taken in serial form, $22.50 per share for the second 10,000 shares, $27.50 for the fourth 10,000 shares, and $30 per share for the fifth 10,000 shares, and that all money received for said shares over and above $10 per share and the expenses, etc., would constitute a surplus capital stock of said Oklahoma National Life Insurance Company; that Howeth & Co. and the Oklahoma National Life Insurance Com-

pany failed and refused to return to plaintiff the $1,250, or to cancel said subscription contract, said contract having been placed on file at once with the secretary of said Oklahoma National Life Insurance Company; that at the time of bringing this suit the defendant Oklahoma National Life Insurance Company had per-fected its initial organization and received its certificate of in-corporation, subject to the constitutional and statutory require-ments of the state of Oklahoma. In addition to said stipulation, witness R. B. Howeth, testified that he was secretary of the Okla-homa National Life Insurance Company; that he placed the name of plaintiff, and the number of shares subscribed for by him, on a book kept for that purpose by the Oklahoma National Life Insurance Company at the time it came into the office, and notified plaintiff by letter of the acceptance of such subscription by the Oklahoma National Life Insurance Company, on the 2d or 3d day of April, 1909.

The stipulation and testimony of R. B. Howeth constitute all the evidence in this case. The plaintiff failed to furnish any evidence to substantiate his allegation of fraud. If he desired to rely upon his allegation of fraud, he should have proven that the defendant made a material representation which was false, and known to be false at the time, and made with the intention that it should be acted upon by the plaintiff, and that plaintiff re-lied upon such false representation to his injury. Inasmuch as the allegation of fraud is not proven, that question is eliminated from this cause.

The remaining question to be determined by this court is as to whether a subscriber to the capital stock of a corporation can withdraw his subscription after acceptance by the corporation. It is admitted that the insurance company was incorporated, and it is not denied that the corporation accepted the contract of subscription, the only contention being that the corporation had no power to accept the contract of subscription until a license was issued under section 3756, Comp. Laws 1909 (Rev. Laws 1910, sec. 3439), permitting the insurance company to commence business. This was not essential in order to give the corporation the power to accept the subscription. Section 3756, *supra,* pro-

vides that no domestic insurance company shall commence business until it has filed with the insurance commissioner a properly certified copy of its charter and articles of incorporation and a statement of its financial condition, and has received from the insurance commissioner a certificate to do business. Section 3765, Comp. Laws 1909 (Rev. Laws 1910, sec. 3448), provides that no domestic life insurance company shall be licensed to transact business in this state unless possessed of at least $100,000 paid-up capital stock. The contention of plaintiff is that the insurance company, not having received a license to commence business, could not accept the contract of subscription until such license was issued. It is apparent that before an insurance company could comply with section 3765, *supra*, by showing that it had a paid-up capital of $100,000, it would have to first accept the subscription for that amount to its capital stock, in order to make such showing. This would not be commencing business as contemplated by section 3756, *supra*, but would only be a part of its initial organization.

The insurance company was duly incorporated and organized, and the subscription was filed and accepted by the insurance company before a demand was made for a withdrawal of such subscription. This being true, the plaintiff could not withdraw his subscription without the consent of the corporation and all the stockholders, except on the ground of fraud or mistake.

It was held in *Chicago Building & Mfg. Co. v. Lyon.* 10 Okla. 704, 64 Pac. 6:

"One cannot withdraw his subscription to the capital stock of a corporation without the consent of all persons who subscribed to such stock, prior to such withdrawal."

In 1 Thompson on Corporations, sec. 760, it is said:

"It may be asserted, as the first rule under this proposition, that, after a valid subscription to the capital stock of a corporation has been made and accepted, there can be no cancellation or release from the obligation without the consent of the corporation and all the stockholders; in other words, the subscriber cannot withdraw from the corporation at his pleasure."

In 1 Purdy's Beach, Private Corporations, sec. 240, it is said:

"A subscription may, of course, be withdrawn any time before its acceptance by the corporation and without its consent, whether made before or after organization of the corporation; but after it has been accepted, the subscriber cannot, without consent of the corporation, surrender his shares in a way to avoid liability to payment of his subscription.   *   *   *   To effect such a surrender of shares the express or implied consent of all the parties in interest is requisite."

*Sanford Starrett v. Rockland Fire & Marine Ins. Co.,* 65 Me. 374; *Minneapolis Threshing Machine Co. v. Davis,* 40 Minn. 110, 41 N. W. 1026, 3 L. R. A. 796, 12 Am. St. Rep. 701; *Hudson R. E. Co. v. Tower,* 156 Mass. 82, 30 N. E. 465, 32 Am. St. Rep. 434; *Id.,* 161 Mass. 10, 36 N. E. 680, 42 Am. St. Rep. 379; *Penobscot R. Co. v. Dummer,* 40 Me. 172, 63 Am. Dec. 654; *Marysville Electric L. & P. Co. v. Johnson,* 93 Cal. 538, 29 Pac. 126, 27 Am. St. Rep. 215; *Mill Co. v. Felt,* 87 Me. 234, 32 Atl. 888, 33 L. R. A. 593, 47 Am. St. Rep. 323; Cook on Corporations, vol. 1, sec. 169.

The cause should therefore be affirmed.

By the Court:   It is so ordered.