# MUNCY TRACTION ENGINE CO. v. DeLa GREEN.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS OF LYCOMING COUNTY.

Argued March 15, 1888—Decided April 23, 1888.

A subscriber to the capital stock of a manufacturing company, proposed to be incorporated under the act of April 29, 1874, P. L. 73, may withdraw his subscription at any time before the association is ready to file

Statement of Facts.

its articles with the secretary of the commonwealth; and this even though he may have induced others to subscribe to the stock with him.*

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 7 January Term 1888, Sup. Ct.; court below, No. 525 March Term 1887, C. P.

On March 4, 1887, the Muncy Traction Engine Company, a manufacturing company incorporated under the act of April 29, 1874, P. L. 73, brought assumpsit against DeLa Green, to recover a subscription by the defendant to the stock of plaintiff company. Issue.

At the trial on May 11, 1887, the case made to appear was substantially as follows:

Early in 1886, a paper was circulated to obtain subscriptions to the capital stock of a company to be incorporated for the manufacture of traction, portable and stationary engines and boilers, etc., etc., at Muncy, Pa., the capital stock to be fifty thousand dollars, divided into five hundred shares of one hundred dollars each. The defendant took an interest in the project from the start, solicited subscriptions, subscribed himself, and induced others to subscribe. It became apparent that the full amount of the proposed capital stock could not be raised, when the foregoing subscription list was abandoned and a new one adopted, identical with the first except reducing the capital stock to thirty thousand dollars, at least, and the par value of each share to fifty dollars. This subscription paper was as follows:

" We, the undersigned, agree to take the number of shares set opposite our names, in a company to be incorporated under the laws of the commonwealth, and located at Muncy, Pa., for the manufacture of traction, portable and stationary engines, saw-mills, farm and other machinery, and for the purpose of doing a general foundry and machine business.

" The capital stock of said corporation to be thirty thousand dollars ($30,000) or more, to be divided into shares of fifty dollars each.

---

* This case is reported now, by direction. See Auburn Bolt Works v. Shultz, ante 256.

Charge of Court below.

" After sufficient stock has been subscribed and a preliminary organization has been effected, ten per cent of each share of the stock subscribed is to be paid for the purpose of securing a charter; after a charter has been obtained and a permanent organization effected, the balance of the subscriptions to be paid in three equal payments, in three, six and nine months from date of organization of the company.

| " NAMES. | SHARES. | AMOUNT. |
|---|---|---|
| P. M. Trumbower, | 100 | $5,000. |
| H. B. Larzelere, | 80 | 4,000. |
| Mrs. C. Bowman, | 20 | 1,000. |
| DeLa Green, | 20 | 1,000. |
| John M. Bowman, | 20 | 1,000." |

And about seventy-five others.

This subscription was completed about March 1, 1886, and on March 4, 1886, a meeting of the subscribers was held, when the number of directors was fixed, a committee on articles of association and by-laws appointed, and the name of the intended corporation adopted. At a meeting on March 8th, nominations were made for the office of directors; at another meeting on March 9th, articles of association and by-laws were adopted; and at a meeting on March 10th, the members of the board of directors were elected. The defendant was present at the meetings of March 8th and March 9th. At one or the other of these meetings, he handed to Mr. Gray, the acting chairman, who caused it to be read publicly, the following notice in writing: " For reasons satisfactory to myself, I hereby withdraw my subscription to the proposed Muncy Traction Engine company, and forbid the use of my name in connection with the same for any purpose whatever." On March 27, 1886, the application for a charter of incorporation was prepared and filed, and on April 16th, letters patent issued.

At the close of the testimony, the court, CUMMIN, P. J., charged the jury:

The issue which you have been sworn to try arises in an action of assumpsit, brought by the Muncy Traction Engine Company against DeLa Green, and this action is brought by the plaintiff to recover the amount of a subscription made by the defendant to this company in its preliminary existence.

Charge of Court below.

The paper on which the plaintiff seeks to recover is in these words. " We, the undersigned, agree to take the number of shares set opposite our names, in a company to be incorporated under the laws of the commonwealth, etc., etc." Then follows the names of a number of persons, with the number of shares and amount of money they respectively subscribe; and among others, is the name of DeLa Green, this defendant, for twenty shares, or $1,000.

The plaintiff showed this paper and the charter of the company, and thus made out a case. If there was nothing else here, there would be nothing but to find the interest, and that would be the end of the case. The defendant says, however, he ought not to pay this sum of money; and as a defence sets up here that, before this company was organized, he notified them that he withdrew, and would not pay his subscription; that, for reasons satisfactory to himself, he desired not to continue any further in the company. That is the principal point of the defence in this case. And whether or not he had the right to do this thing at the time he did do it, is the real question that will determine whether the plaintiff will be entitled to recover in this case.

Now, just when these subscriptions were made, or just when this withdrawal was filed, is not clearly in evidence. We have very few dates in respect to many of these transactions. A general history of the entire transaction would be substantially as follows:

In the early part of the year 1886, some enterprising citizens of Muncy proposed to get up this corporation. They went about with subscription papers, and among others who were active was the defendant in this case. They solicited subscriptions for the purpose of erecting a corporation, and at that time they hoped to establish a company with a capital of fifty thousand dollars, with shares at one hundred dollars each. Numerous subscriptions were made, but it was discovered by the projectors that they could not raise fifty thousand dollars, and it was changed to thirty thousand dollars; and a new paper was gotten up similar to the original, except it changed the capital stock from fifty to thirty thousand, and the par value from one hundred to fifty dollars; and the persons who signed the first were asked to sign the second, and many did,

Charge of Court below.

perhaps all. Among others, this defendant signed the second paper. Meetings were held from time to time of the persons interested in the matter. They were not stockholders yet. They were all projectors of the company, persons interested in getting it up. Meetings were held from time to time to discuss the probability of the success of the enterprise, and to give encouragement to it, and to increase the subscriptions. At these meetings officers for the time being were elected; Mr. Gray, temporary chairman, and Mr. Schuyler acting as secretary. Minutes were kept, and they have been put in evidence. These meetings, so far as the minutes show, were all held in the early part of March of the same year. The fourth of March, 1886, is said to be the first meeting. All this matter about the first and second papers had taken place before the fourth of March. Perhaps all the subscribers were not there. We have no date until the fourth of March; another meeting on the 8th, another on the 9th, and another on the 10th; and these four meetings represent all the minutes that we have, so far as they were given in evidence. At some of these meetings, this defendant was present. It was at a meeting held by the projectors of the company that he sent to the chairman a letter which was in substance as follows: "For reasons satisfactory to myself, I hereby withdraw my subscription to the proposed Muncy Traction Engine Company, and forbid the use of my name in connection with the same for any purpose whatever." This paper was received by the chairman at a meeting, and he read the notice and left the paper lying on the table in front of him, where it remained for some time. What meeting that was, or when held, we have no definite knowledge. Some witnesses testified it was before the preliminary organization. When was the preliminary organization? Of it there is no definite date given. The next thing we know of this company, an application is made for a charter, and the articles of association, which they are required by law to file, were signed on the twenty-seventh of March, 1886. There we have another date. Now, at that time they were certainly organized, because they gave the names of their directors, and they had organized by that time. Just how long before that they had, we have no definite information.

[That leaves the question there is in this case for you to

determine ; this question of the time when this withdrawal was delivered to Mr. Gray. Was it before they had perfected their organization, so they were ready to make application to the governor? If they had not perfected their organization before the twenty-seventh of March, that is the date you will go by. Was this withdrawal sent in before that time? If that was the time they were ready to file their application, if the withdrawal was before that time, DeLa Green had a perfect right to do it, no matter what his reasons were, and not only he, but any person. The right did not belong to any particular person. The important question in the formation of a corporation of this kind is, when the association was ready to file their articles with the secretary of the commonwealth. Until this time, the whole scheme is inchoate, and a subscriber may withdraw. That leaves just that question to be determined by you.] [1]   [If this defendant withdrew his name by a paper in writing that was read to the meeting as testified to, and that was before they were ready to file their papers in the secretary of the commonwealth's office, then the plaintiff cannot recover. But if they were ready, then he could not withdraw, except for fraud, of which there is no evidence in this case, or perhaps some other reasons. If he filed his withdrawal before that time, the plaintiff cannot recover.] [2]   If afterward, they can recover. That, it seems, is the only point in this case.

Defendant's counsel request the court to charge :

1. If the jury believe from the evidence that the defendant, at any time prior to the execution of the articles of incorporation, gave written notice of his withdrawal from his subscription to the proposed company, their verdict must be for the defendant.

Answer : I cannot affirm that point just in the words in which it is expressed, but I say this : If the jury believe from the evidence that the defendant had withdrawn at any time prior to the time when this company was ready to file its articles of association in the office of the secretary of the commonwealth, and gave written notice of his withdrawal, then your verdict must be for the defendant.

2. It appearing by the subscription paper signed by the defendant that the subscriptions were to be paid in cash, and no reference therein to any subscriptions to be paid in property, and by the charter, that two of the principal subscriptions

Arguments.

were paid in whole or in part in real estate and patent rights, the defendant is not bound by his subscription, unless the jury are satisfied by the evidence that the defendant assented to the change.

Answer: We refuse to charge you as requested in that point. Under the statute which authorizes companies of this kind, real estate and other things necessary may be received for stock issued by them.

3. Under all the evidence in the case, the defendant is entitled to recover.

Answer: We decline to charge you as requested in that point. We leave that the only single question for you to decide; that if this defendant, by written notice, read by the chairman of the meeting, withdrew, and said his subscription was withdrawn, before they were ready to file their papers in the secretary of the commonwealth's office, the plaintiff cannot recover. It is no matter what reason he had for it, or any reason whatever. If you find, on the other hand, that he did not withdraw until after they were ready, he cannot escape and must pay his subscription, and your verdict will be for the plaintiff for the amount of its claim with interest.

—The jury returned a verdict for the defendant. A rule for a new trial having been discharged and judgment entered, the plaintiff took this appeal and assigned for error:

1, 2. The portions of the charge embraced in [ ] [1] [2]

*Mr. W. D. Crocker* and *Mr. Samuel Linn*, for the appellant.

Counsel cited: Greer v. Railway Co., 96 Pa. 391; Miller v. Railroad Co., 87 Pa. 99; Morawetz on Corp., §§ 47–50; Graff v. Railroad Co., 31 Pa. 498; Edinboro' Academy v. Robinson, 37 Pa. 210; Shober v. Park Ass'n, 68 Pa. 429; Caul v. Gibson, 3 Pa. 416; Phipps v. Jones, 20 Pa. 260; Lake Ontario R. Co. v. Mason, 16 N. Y. 453; Garrett v. Railroad Co., 78 Pa. 465; Bucher v. Railroad Co., 76 Pa. 312; Strasburg R. Co. v. Echternacht, 21 Pa. 220.

*Mr. Henry Johnson*, for the appellee.

Counsel cited: Shober v. Park Ass'n, 68 Pa. 431; Phipps v. Jones, 20 Pa. 264; Edinboro' Academy v. Robinson, 37 Pa. 213; McConahy v. Turnpike Road Co., 1 P. & W. 437; Hi-

bernia Turnpike Co. v. Henderson, 8 S. & R. 219 ; Bucher v. Railroad Co., 76 Pa. 312 ; Garrett v. Railroad Co., 78 Pa. 467.

PER CURIAM:

At the time DeLa Green withdrew his subscription, there was no company formed, and there was nothing to prevent all the subscribers to the proposed enterprise from withdrawing from that enterprise had they seen proper. By what legal consideration, then, was DeLa Green bound? Was he bound because he induced others to sign? But, if the other subscribers to the undertaking were not bound to go on with it, and might at any time before application for a charter have dropped it, surely the defendant was no more bound than they. Viewing the matter in this light, we do not see how the judgment of the court below can be reversed.

Judgment affirmed.