MINNEAPOLIS THRESHING MACHINE COMPANY *vs.* JOHN A. DAVIS.

January 30, 1889.

Corporation—Subscription to Stock in Company to be Formed.—A subscription by a number of persons to the stock of a corporation, to be thereafter formed by them, constitutes—*First*, a contract between the subscribers themselves to become stockholders when the corporation is formed, upon the conditions expressed in the agreement, and as such it is binding and irrevocable from the date of the subscription; *second*, it is in the nature of a continuing offer to the proposed corporation, which, upon acceptance by it, becomes as to each subscriber a contract between him and the corporation.

Same—Subscription, when Complete—Delivery to a Promoter.—A promoter of a proposed corporation, who solicits and procures stock subscriptions, is the agent of the body of the subscribers to hold the subscriptions until the corporation is formed, and then turn them over to it without any further act of delivery on the part of the subscribers. Hence a delivery of a subscription to such promoter is a complete delivery, so that it becomes *eo instanti* a binding contract as between the subscribers.

Same—Subscription on Secret Oral Condition.—Where a person subscribes to the stock of the proposed corporation, and delivers the subscription to such promoter, and other persons, without notice of any oral condition attached to such delivery, also subscribe to the stock, and pay the same in, and in reliance on the subscriptions the corporation is organized, engages in its business, expends large sums of money, and contracts liabilities therein, such person, when sued for instalments due on his stock subscriptions, will not be allowed to defeat a recovery by showing that he attached a secret oral condition to the delivery of his subscription to the promoter.

Plaintiff brought this action in the district court for Hennepin county, for instalments alleged to be due from defendant as a subscriber to its capital stock. A jury was waived, and the action tried by *Lochren*, J., who held that the defendant never became a subscriber, and ordered judgment in his favor. A new trial was refused, and the plaintiff appealed. The facts on which the question of the defendant's liability turned are stated in the opinion, the ma-

terial parts of the subscription paper, Exhibits A and B, therein mentioned being as follows:

"Memorandum of agreement made and entered into between the undersigned, citizens of Minneapolis, Minn., each for himself, parties of the first part, and John S. McDonald, of Fond du Lac, Wisconsin, party of the second part: The party of the first part, in consideration of the party of the second part moving his plant and machinery to the city of Minneapolis, to enter into the manufacture of threshing machines, horse-powers, and engines, and for the purpose of forming a joint-stock company to engage in the manufacture of the aforesaid threshers and other machinery, * * * with a capital stock of $250,000, the aforesaid citizens of Minneapolis, parties of the first part, hereby subscribe to and severally agree to take and pay for, in cash, the amount of capital stock set opposite their respective names in a company to be organized as aforesaid for the purposes aforesaid. And the said John S. McDonald hereby agrees that whenever the amount subscribed, exclusive of his own, shall reach the sum of $190,000, he will subscribe to said capital stock the further sum of $60,000, payable in the manner specified in a certain proposition signed by him and attached hereto. The conditions upon which said subscriptions are made are as follows, to wit: *First.* No subscription is to be binding until the sum of $250,000 is subscribed, including the subscription of John S. McDonald. *Second.* The $190,000 subscribed by the citizens of Minneapolis to the capital stock aforesaid it is understood and agreed is to be paid in payments as follows, as soon as the company is organized. * * * The undersigned subscribe the amounts set opposite their respective names on condition that all the works of the company shall be located at Junction City, Hennepin county, Minnesota. JOHN A. DAVIS, $5,000," [and others.] "Proposition made by John S. McDonald referred to in the annexed memorandum: The said John S. McDonald is to subscribe for $60,-000 of the capital stock as follows: * * * JOHN S. McDONALD."

*C. M. Pond* and *James O. Pierce*, for appellant.

*Ferguson & Kneeland*, for respondent.

MITCHELL, J. This was an action to recover instalments due on subscriptions to stock of the plaintiff. The facts fully appear from

the findings of the court, in connection with Exhibits A and B attached to the complaint. Those material for present purposes are that, a scheme having been started to organize a manufacturing corporation with $250,000 capital, whose works should be located at Junction City, near Minneapolis, and one McDonald having proposed that if the citizens of Minneapolis would subscribe $190,000 to the capital stock, he would subscribe the remaining $60,000, one Janney, a promoter, but not a subscriber to the stock of the proposed corporation, acting as a voluntary solicitor, having with him the subscription paper, (Exhibits A and B,) about April 1, 1887, proceeded to canvass for subscriptions to the stock of the proposed corporation, on the terms and conditions embodied in the paper. He first applied to defendant, who subscribed $5,000 of stock. Afterwards, and about the same date, other citizens respectively subscribed to the stock, on the same paper, to the aggregate amount, including defendant's subscription, of $190,000, of which over $65,000 has been paid in to plaintiff. Thereupon McDonald, in accordance with his proposition, subscribed the remaining $60,000, which he has paid up in full. All the conditions expressed in the written subscription (Exhibit A) having been fully performed and complied with, the proposed corporation was afterwards, about April 25, 1887, organized, and these subscriptions to its stock delivered over to it. The corporation, acting in good faith upon such subscriptions, including that of defendant, expended large sums of money in locating and constructing its works, and entered into large contracts, and incurred liabilities to the amount of over $75,000. During all this time, the corporation had no notice or knowledge of any condition being attached to defendant's subscription other than those expressed in the subscription paper itself. Neither is it found or claimed that any of the other subscribers to the stock had any such notice or knowledge. Defendant was not present at the organization of the corporation, and never attended or took part in any of its meetings, and had no notice or knowledge that the subscription paper had been transferred or delivered over to the plaintiff, or that plaintiff relied on it, until about November, 1887, just prior to the commencement of this action.

Upon the trial the defendant was permitted, against plaintiff's ob-

jection and exception, to testify that he signed or subscribed to the stock only upon the express oral condition and agreement, then had between him and Janney, that the latter should retain in his possession said agreement with his name signed thereto, and not deliver it to any one, or use it in any way, until certain four persons should subscribe to the stock, each in the sum of $5,000; that Janney took the agreement from defendant on that express condition and understanding, and not otherwise; that none of these four persons ever did subscribe to the stock of the plaintiff; and that defendant never authorized Janney or any one to deliver said agreement to any one except upon the condition referred to. The court found the facts to be in accordance with the testimony, and upon that ground found as a conclusion of law that defendant never became a subscriber to the plaintiff's stock. The competency of this evidence is the sole question in this case.

Under the elementary rule of evidence that a written agreement cannot be varied or added to by parol, it is not competent for a subscriber to stock to allege that he is but a conditional subscriber. The condition must be inserted in the writing to be effectual. This rule applies with special force to a case like the present, where to allow the defendant now to set up a secret parol arrangement by which he may be released, while his fellow-subscribers continue to be bound, would be a fraud, not only upon them, but upon the corporation which has been organized on the faith of these subscriptions and upon its creditors. The defendant of course does not attempt to controvert so elementary a rule as the one suggested, but contends that the effect of this evidence was not to vary or contradict the terms of the writing, but to prove that there was never any delivery of it, and hence that there never was any contract at all, delivery being prerequisite to the very existence of a contract. His claim is that the subscription paper was given to and received by Janney merely as an escrow, or as in the nature of an escrow, only to be delivered or used upon the performance of certain conditions precedent, and that until they were performed there could be no valid delivery.

In determining this question it becomes important to consider the nature of a subscription to the stock of a proposed corporation, and

v.40m—8

the relation of the different parties to each other, under the facts of this case.    A subscription by a number of persons to the stock of a corporation to be thereafter formed by them has in law a double character :    *First.*  It is a contract between the subscribers themselves to become stockholders without further act on their part immediately upon the formation of the corporation.    As such a contract it is binding and irrevocable from the date of the subscription, (at least in the absence of fraud or mistake,) unless cancelled by consent of all the subscribers before acceptance by the corporation.   *Second.* It is also in the nature of a continuing offer to the proposed corporation, which, upon acceptance by it after its formation, becomes as to each subscriber a contract between him and the corporation.   1 Mor. Priv. Corp. § 47 *et seq.*; *Red Wing Hotel Co.* v. *Frederich,* 26 Minn. 112, (1 N. W. Rep. 827.)  Janney, the promoter who solicited and obtained the subscriptions, occupied the position of agent for the subscribers as a body, to hold the subscriptions until the corporation was formed in accordance with the terms and conditions expressed in the agreement, and then turn it over to the company without any further act of delivery on part of the subscribers.   The corporation would then become the party to enforce the rights of the whole body of subscribers.    It follows, then, that, considering the subscription as a contract between the subscribers, a delivery to Janney by a subscriber was a complete and valid delivery, so that his subscription became *eo instanti* a binding contract.   The case stands precisely as a case where a contract is delivered by the obligor to the obligee.   It cannot therefore be treated as a case where a writing has been delivered to a third party in escrow.

The defendant, however, attempts to bring the case within the rule of *Westman* v. *Krumweide,* 30 Minn. 313, (15 N. W. Rep. 255,) in which this court held that parol evidence was admissible to show that a note delivered by the maker to the payee was not intended to be operative as a contract from its delivery, but only upon the happening of some contingency, though not expressed by its terms; that is, that the delivery was only in the nature of an escrow.   We so held upon what seemed the great weight of authority, although the doctrine, even to the extent it was applied in that case, is a somewhat

dangerous one. The distinction between proving by parol that the delivery of a contract was conditional, and that the contract itself contained a condition not expressed in the writing, is one founded more on refinement of logic than upon sound practical grounds. It endangers the salutary rule that written contracts shall not be varied by parol. Said Erle, J., in *Pym* v. *Campbell*, 6 El. & Bl. 370, in sustaining such a defence: "I grant the risk that such a defence may be set up without ground, and I agree that a jury should therefore look on such a defence with suspicion." And in all the cases where such a defence has been sustained, so far as we can discover, they have been cases strictly between the original parties, and where no one has changed his situation in reliance upon the contract and in ignorance of the secret oral condition attached to the delivery, and hence no question of equitable estoppel arose. Many of the cases have been careful to expressly limit the rule to such cases. *Benton* v. *Martin*, 52 N. Y. 570; *Sweet* v. *Stevens*, 7 R. I. 375.

Conceding the rule of *Westman* v. *Krumweide, supra,* to its full extent, there are certain well-recognized doctrines of the law of equitable estoppel which render it inapplicable to the facts of the present case. This subscription agreement was not intended to be the sole contract of defendant. It was designed to be also signed by other parties, and from its very nature defendant must have known this. Each succeeding subscriber executed it more or less upon the faith of the subscriptions of others preceding his. The paper purports on its face to be a completed contract, containing all the terms and conditions which the subscribers intended it should. When this agreement was presented to others for subscription, defendant had not only signed it in this form, but he had also done what, under the facts, constituted, to all outward appearances at least, a complete and valid delivery. He had placed it in the proper channel according to the ordinary and usual course of procedure for passing it over to the corporation when organized, and clothed Janney with all the *indicia* of authority to hold and use it for that purpose without any other or further act on his part, untrammelled by any condition other than those expressed in the writing. In reliance upon this, others have not only subscribed to the stock, but have since

paid in a large share of it. The corporation has been organized and engaged in business, expending large sums of money, and contracting large liabilities, all upon the strength of these subscriptions to its stock, and in entire ignorance of this secret oral condition which defendant now claims to have attached to the delivery. To permit defendant to relieve himself from liability on any such ground, under this state of facts, would be a fraud on others who have subscribed and paid for stock, upon the corporation which has been organized and incurred liabilities in reliance upon the subscriptions, and on creditors who have trusted it. The familiar principle of equitable estoppel by conduct applies, viz.: Where a person, by his words or conduct, wilfully causes another to believe in the existence of a certain state of facts, and induces him to act on that belief so as to alter his own previous condition, he is estopped from denying the truth of such facts to the prejudice of the other.

We have examined all of the numerous cases cited by defendant's counsel, and fail to find one which, in our judgment, is analogous in its facts, or the law of which will cover the present case. The two which at first sight might seem most strongly in his favor are *Beloit & Madison R. Co.* v. *Palmer*, 19 Wis. 574, and *Ottawa, etc., R. Co.* v. *Hall*, 1 Bradw. 612. But an examination of those cases will show that in neither did or could any question of estoppel arise, and in both the court held that the person to whom the instrument was delivered after signature was a stranger to it, so that it was strictly a delivery in escrow to a third party. Cases are cited where a surety signed a bond or non-negotiable note, and delivered it to the principal obligor upon condition that it should not be delivered to the obligee until some other person signed it, and where, without such signature, the principal obligor delivered it to the obligee, and yet the courts held that the surety was not liable, although the obligee had no notice of the condition. Such cases seem usually to proceed upon the theory that a delivery to the principal obligor under such circumstances is a mere delivery in escrow to a stranger; the term "stranger," in the law of escrows, being used in opposition merely to the party to whom the contract runs. It may well be doubted whether in such cases, where the instrument is complete on its face, the

courts have not sometimes ignored the law of equitable estoppel. No such defence would be allowed in the case of negotiable paper, and it is not clear why the distinction should be drawn on that line. The doctrine of estoppel rests upon totally different grounds, and operates independently of negotiability, being founded upon principles of equity. But whether the cases referred to be right or wrong, we do not see that they are in point here. Our conclusion is that the court erred in admitting the evidence objected to, and for that reason a new trial must be awarded

Order reversed.