## CANYON CREEK ELEVATOR & MILLING CO., RESPONDENT, *v.* ALLISON, APPELLANT.

### (No. 3,738.)

(Argued March 21, 1917. Reargued and resubmitted April 24, 1917. Decided May 31, 1917.)

[165 Pac. 753.]

*Corporations — Stock Subscriptions — Conditions Precedent — Breach of Condition—Waiver—Withdrawal of Subscription —Notice.*

Corporations—Stock Subscriptions—Conditions Precedent.
1. A stock subscription agreement, providing that, if a committee appointed from "our number" reported unfavorably on the acquisition of a milling plant, the subscription might be declared void, contemplated as a condition precedent that the committee was to be appointed by all the subscribers.

Same—Unconditional Subscription—Rights of Subscriber.
2. Ordinarily an unconditional stock subscription is a continuing offer until the proposed corporation is formed, and until that time it may be withdrawn at the subscriber's option.

Same—Conditional Subscription.
3. Where a stock subscription agreement contains a condition precedent, the condition must be fulfilled, or the agreement is not binding, although the corporation is formed.

[As to conditional subscriptions for stock in the corporation, see note in Ann. Cas. 1913C, 421.]

Same—Conditional Subscription—Breach of Condition.
4. Where a stock subscription agreement provided that if a committee, appointed from the subscribers, should report unfavorably on a certain plant, the subscriber might withdraw, evidence that a self-constituted committee inspected and reported favorably on such plant did not make the subscription contract binding.

Same—Waiver of Condition.
5. A stock subscription provision, that it might be declared void if a committee selected by the subscribers should report unfavorably on a certain plant, was not waived by a subscriber, who, knowing that a self-constituted group of subscribers had inspected and reported favorably, did not attend their meetings or ratify their action.

Same—Withdrawal of Subscription—Notice.
6. Defendant in an action to collect a stock subscription made under the condition precedent mentioned above, which remained unfulfilled, was not obliged to give notice of his withdrawal, although the corporation was thereafter fully organized; having, however, given oral notice of his intention to withdraw, it was sufficient.

*Appeal from District Court, Yellowstone County; Geo. W. Pierson, Judge.*

ACTION by the Canyon Creek Elevator & Milling Company against W. A. Allison. Judgment for plaintiff, and defendant appeals from it and an order overruling his motion for a new trial. Reversed and remanded, with directions.

*Mr. F. B. Reynolds,* for Appellant, submitted a brief and one in reply to that of Respondent, and argued the cause orally.

The more modern doctrine gives the subscriber who has been induced to make his subscription by reason of fraudulent rep· resentations of a promoter the same right to rescind that he would have if such fraudulent representations, so inducing the subscription, had been made by an agent of the corporation after its organization, upon the theory that the corporation cannot retain the benefits of the subscription without assuming its burdens, and that if the subscription was secured by fraud, and the corporation accepts the subscription and creditors' rights have not intervened, it takes it subject to the right of a subscriber to rescind. (1 Thompson on Corporations, secs. 708, 727.) False representations by the promoter constitute such a fraud on subscribers as authorizes a rescission of the subscription contract. (*Bohn* v. *Burton-Lingo Co.* (Tex. Civ.), 175 S. W. 173; *Luetzke* v. *Roberts,* 130 Wis. 97, 109 N. W. 949; *Tinker* v. *Kier,* 195 Mo. 183, 94 S. W. 501; *Manning* v. *Berdan,* 135 Fed. 159; *Second Nat. Bank* v. *Greenville S. etc. Co.,* 23 Ohio C. C. 274; *West End Real Estate Co.* v. *Nash,* 51 W. Va. 341, 41 S. E. 182; *McDermott* v. *Harrison,* 56 Hun, 640, 9 N. Y. Supp. 184; *Barcus* v. *Gates,* 89 Fed. 783, 32 C. C. A. 337.)   A promoter is an agent of the corporation being promoted. (*Bosher* v. *Richmond & H. Land Co.,* 89 Va. 455, 37 Am. St. Rep. 879, 16 S. E. 360; *Virginia Land Co.* v. *Haupt,* 90 Va. 533, 44 Am. St. Rep. 939, 19 S. E. 168.)   "The election to rescind may be by express words or by acts evidencing an intention to treat the contract as not binding." (9 Cyc. 435.)

A subscriber to the capital stock of a corporation about to be organized has the absolute right to participate in the organ-

ization, and that right is in effect a condition precedent to the enforcement of the subscription contract.

In this case the defendant, and, in fact, a majority of the subscribers, not only did not participate in the organization of the plaintiff corporation, but they had no notice of the organization meeting, and did not authorize anyone to act for them. Under these circumstances, the stockholders of the plaintiff corporation are only those who executed the articles of incorporation, and those who, after the execution of the articles of incorporation, ratified the incorporation and recognized themselves as stockholders thereof. (1 Thompson on Corporations, sec. 512; *Harrison Nat. Bank* v. *Votaw,* 51 Kan. 362, 32 Pac. 1111; *Bullock* v. *Falmouth etc. Co.,* 85 Ky. 184, 3 S. W. 129; *Nickum* v. *Burckhardt,* 30 Or. 464, 60 Am. St. Rep. 822, 47 Pac. 788, 48 Pac. 474; *Baltimore City Pass. Ry. Co.* v. *Hambleton,* 77 Md. 341, 26 Atl. 279; *De Giverville Land Co.* v. *Thompson,* 190 Mo. App. 682, 176 S. W. 409; *St. Paul etc. R. Co.* v. *Robbins,* 23 Minn. 439.)

A subscription to stock on a condition precedent does not render a subscriber a stockholder until the condition is performed. (*Martin* v. *Pensacola etc. R. Co.,* 8 Fla. 370, 73 Am. Dec. 713; *Midland City Hotel Co.* v. *Gibson,* 11 Ga. App. 829, 76 S. E. 600; *Chase* v. *Sycamore etc. R. Co.,* 38 Ill. 215; *Parker* v. *Thomas,* 19 Ind. 213, 81 Am. Dec. 385; *Burlington etc. R. Co.* v. *Boestler,* 15 Iowa, 555; *Belfast etc. Ry. Co.* v. *Moore,* 60 Me. 561; *Morrow* v. *Nashville Iron etc. Co.,* 87 Tenn. 262, 10 Am. St. Rep. 658, 3 L. R. A. 37, 10 S. W. 495; 10 Cyc. 412, 418; 1 Thompson on Corporations, sec. 604.)

So-called subscriptions to the capital stock of a corporation not yet formed are merely offers to subscribe. (*Wright Bros.* v. *Merchants & Planters' Packet Co.,* 104 Miss. 507, Ann. Cas. 1915C, 1111, 61 South. 550; *Bryant's Pond Steam Mill Co.* v. *Felt,* 87 Me. 234, 47 Am. St. Rep. 323, 33 L. R. A. 593, 32 Atl. 888; *Planters & Merchants' Ind. Packet Co.* v. *Webb,* 156 Ala. 551, 16 Ann. Cas. 529, 46 South. 977, 978; *Vermillion Sugar Co.* v. *Vallee,* 134 La. 661, 64 South. 670; *Hudson Real Estate*

*Co.* v. *Tower,* 156 Mass. 82, 32 Am. St. Rep. 434, 30 N. E. 465·
*Midland City Hotel* v. *Gibson,* 11 Ga. App. 829, 76 S. E. 600;
*Muncy Traction Eng. Co.* v. *Green,* 143 Pa. 269, 13 Atl. 747;
Clark & Marshall on Private Corporations, sec. 451; 1 Thompson on Corporations, 2d ed., secs. 510–519, 543.)   Like any offer, such an offer may be withdrawn at any time before organization of the corporation by giving notice of withdrawal.   (See cases cited above, and Revised Codes, sec. 4992; *Auburn Bolt & Nut Wks.* v. *Shultz,* 143 Pa. 256, 22 Atl. 904; *Plank's Tavern Co.* v. *Burkhard,* 87 Mich. 182, 49 N. W. 562; *Patty* v. *Hillsboro Roller Mill Co.,* 4 Tex. Civ. 224, 23 S. W. 336.)   Notice of withdrawal may be given to another subscriber prominent in the enterprise or who is in charge of subscription paper. (*Planters & Merchants' Ind. Packet Co.* v. *Webb,* 156 Ala. 551, 16 Ann. Cas. 529, 46 South. 977; *Hudson Real Estate Co.* v. *Tower,* 161 Mass. 10, 42 Am. St. Rep. 379, 36 N. E. 680, 681.)

*Messrs. Johnston & Coleman,* for Respondent, submitted a brief, *Mr. W. M. Johnston* argued the cause orally.

We are willing to admit that a corporation cannot claim or retain the benefit of a subscription which has been obtained through the fraud of its agents.   In answer to the contention of counsel on this point, it is sufficient to say that neither fraudulent misrepresentations nor concealment is pleaded.   The representations as to the proposed form of incorporation and the proposed location of the mill were as to neither past nor existing facts, and therefore, in order to constitute actionable fraud or deceit, must have been made as promises, which must have been made without any intention of being kept.   (*Smith* v. *Parker,* 148 Ind. 127, 45 N. E. 770; *Sayer* v. *Harker,* 113 Iowa, 584, 85 N. W. 786; sec. 4978, subd. 4, sec. 5073, subd. 4, Rev. Codes.)   There is no allegation of fraud.   It is true that the answer alleges that these representations were false; but, as is pointed out in the following decisions, the allegation that the representations were false simply amounted to an allegation that they were untrue.   (*York* v. *Steward,* 21 Mont. 515, 43

L. R. A. 125, 55 Pac. 29; *Holst* v. *Stewart,* 154 Mass. 445, 28 N. E. 574; *Northwestern S. S. Co.* v. *Dexter, Horton & Co.,* 29 Wash. 565, 70 Pac. 59; *Colorado Springs Co.* v. *Wight,* 44 Colo. 179, 16 Ann. Cas. 644, 96 Pac. 820; *Graves* v. *Horton,* 132 Ga. 786, 26 L. R. A. (n. s.) 545, 65 S. E. 112; *Ahern* v. *Hindman,* 101 Minn. 34, 111 N. W. 734; *Collins* v. *Gifford,* 203 N. Y. 465, Ann. Cas. 1913A, 969, 38 L. R. A. (n. s.) 202, 96 N. E. 721; *Kilpatrick* v. *Miller,* 55 Colo. 419, 135 Pac. 780; *Wheelright* v. *Vanderbilt,* 69 Or. 326, 138 Pac. 857.) Furthermore, there is no allegation in this portion of the answer from which even an inference can be drawn that defendant was misled to his prejudice or damage. (*American Building & Loan Assn.* v. *Eble,* 48 Neb. 573, 67 N. W. 501; *Power & Bro.* v. *Turner,* 37 Mont. 521, 97 Pac. 950; *Robertson* v. *Parks,* 76 Md. 118, 24 Atl. 411.)

The final contention of appellant is that the complaint fails to state a cause of action for two reasons: first, because there is no sufficient allegation of nonpayment, and, secondly, because there is no affirmative allegation of the performance of the condition precedent, to-wit, the appointment of a committee to investigate the mill at Absarokee, and the favorable report by such committee. As to the first of these contentions, we would call the court's attention to the fact that, so far as appears from the opinions in the cases of *State* v. *Lagoni,* 30 Mont. 472, 76 Pac. 1044, *Bebee* v. *Jackson,* 32 Mont. 217, 79 Pac. 1051, and *Van Horn* v. *Holt,* 30 Mont. 69, 75 Pac. 680, there is an absolute failure to make any allegation whatever as to nonpayment.

In the case of *Yancey* v. *Northern Pac. Ry. Co.,* 42 Mont. 342, 112 Pac. 533, it appears that there was a total failure to prove nonpayment, or refusal of payment, and the court will note that that was a case where the decision of the lower court was affirmed.

The case was tried throughout on the theory that defendant had failed and refused at all times to pay the subscription, by reason of the alleged misrepresentations, and it was on this theory that it was submitted to the court. "In an action by a

corporation on a stock subscription, an allegation that plaintiff demanded payment on a certain day, with which demand defendants refused to comply, was sufficient after verdict, as an allegation that the subscription was unpaid." (*Beckner* v. *Riverside etc. Co.,* 65 Ind. 468; *A. Widemann Co.* v. *Digges,* 21 Cal. App. 342, 131 Pac. 882; *Penrose* v. *Winter,* 135 Cal. 289, 67 Pac. 772; *Merrill* v. *Pacific Transfer Co.,* 131 Cal. 582, 63 Pac. 915; *Christiansen* v. *Aldrich,* 30 Mont. 446, 76 Pac. 1007; *Creecy* v. *Joy,* 40 Or. 28, 66 Pac. 295; *Lynch* v. *Bechtel,* 19 Mont. 548, 48 Pac. 1112; *Harmon* v. *Fox,* 31 Mont. 324, 78 Pac. 517; *Crowder* v. *McDonnell,* 21 Mont. 367, 54 Pac. 43.) As to the second of the contentions, the allegation follows the words of the contract. Defendant affirmatively sets up the nonperformance of this condition. Evidence as to this matter was admitted without objection.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action by plaintiff corporation to recover of the defendant $100, the par value of one share of its capital stock, upon a subscription contract therefor. The contract is as follows:

"September 18, 1913.

"Whereas, we, the undersigned, desire to secure and establish a flour mill at Yegen, Mont., for the purpose of doing custom and general mill work and the handling of all kinds of grain; and whereas, the Northwestern Mill Construction Company proposes to erect such a plant at Yegen, Mont.: Now, therefore, we, the undersigned, do hereby agree with each other and with the said Northwestern Mill Construction Company that we will purchase from a company, organized for the purpose of purchasing from the Northwestern Mill Construction Company such a plant, the number of shares set opposite our names. The shares to be $100 each. It being an express condition of this subscription that, if sufficient subscribers are not obtained within sixty days from the date hereof for the purchase of such a plant, or if a committee appointed from our number to in-

spect such a plant in operation shall report unfavorably, then these subscriptions may be, at our option, declared null and void; otherwise, to be in full force and effect.''

The complaint alleges that on or about the date of the contract defendant subscribed for one share of the capital stock of the plaintiff upon the conditions named. It then alleges that all the conditions of the contract had been fulfilled, and that the stock of the plaintiff was issued to each of the subscribers in the amount subscribed by him; that one share was issued and tendered to the defendant, but that he refused to accept and pay for the same. Judgment is demanded for the amount of the subscription, with interest and costs. The answer by counter-averment denies that the committee mentioned in the contract was appointed or made any report. It admits all the other allegations of the complaint and alleges three separate affirmative defenses. At the trial the second one of these was abandoned. The others may be briefly epitomized as follows: (1) That the defendant signed the subscription contract at the solicitation of one Frank Sanderson; that, as an inducement to him to subscribe, Sanderson made certain representations to him as to the kind and character of the corporation to be formed, the location of the milling plant, and the profits such a plant would yield; and that defendant believed such representations and relied upon them as true, whereas they were false; (2) that it was a condition precedent that the committee provided for in the subscription contract should be appointed and should make report before the subscription should become effective; that no such committee was ever appointed; and that for this reason defendant, on December 6, 1913, notified the secretary of plaintiff that his subscription was null and void, and that he would not pay it. The reply joins issue upon these defenses. At the opening of the trial the court held that, upon the issues as made, the burden was upon the defendant. Upon objection by counsel for plaintiff, it excluded all the evidence tendered by defendant in support of the first defense. After the evidence was submitted in support of the third de-

fense, the court on motion directed a verdict for the plaintiff. The defendant has appealed from the judgment and an order denying him a new trial.

Counsel have devoted much space in their briefs to a discussion of the questions whether the complaint states a cause of action, whether the allegations in the first special defense disclose a case of fraud by Sanderson, the solicitor of the subscription, and whether the court properly ruled that the burden was upon the defendant. It is not necessary to consider and determine these questions, because under the evidence submitted in support of the third defense, which presents no substantial conflict, the defendant, we think, was clearly entitled to a verdict and judgment.

The contract does not expressly provide that the two conditions therein named are precedent. The conclusion cannot be avoided, however, that each subscriber, when he signed it, understood that he had reserved to himself the option to withdraw his subscription: First, if the amounts subscribed within sixty days from September 18 were not sufficient to make the proposed purchase; and, second, if a committee appointed from the number of subscribers made an unfavorable report after conducting the proposed investigation. It is clear, also, that they understood that the power to appoint the committee resided in the subscribers, for it was to be appointed from "our number"—language which, from the fact that it included all subscribers, cannot be construed to mean anything other than that the inspection was to be made by authority of all, and for the benefit of all. It may be assumed that those who were engaged in promoting the enterprise were impliedly authorized to take the lead in calling the subscribers together and ascertaining their wishes; but the right to select those whose opinion was to have significance as a determining factor in their subsequent conduct was vested in the common body. The purpose to be served in inserting this provision evidently was that those subscribers who had not practical experience in connection with such enterprises might have the benefit of the judgment of those

of their number whom they deemed qualified to judge of the feasibility and prospective success of the one to be established at Yegen, and therefore whether the proposed investment would probably prove profitable. It was clearly not contemplated that any number of the subscribers less than the whole should select a committee whose judgment should conclude all. In order to reach the desired result, therefore, while it was not necessary that all should take part in selecting the committee, it was necessary that whatever form the proceeding assumed, all were to have an opportunity to take part.

Mr. Thompson, in his work on Corporations, speaking of these subscription contracts, says: "It is not necessary that a condition precedent be expressly stated as such; courts would scarcely require subscribers to say in express language that their subscriptions are made on condition that the corporation shall first perform some particular thing; on the contrary, mere recitals in the contract of subscription are frequently regarded as implied conditions." (Sec. 599.)

In 10 Cyc., at page 412, we find this statement of the rule: "A man cannot be forced into a contract which he does not choose to enter into. If, therefore, a man subscribes for shares in a corporation upon a condition which is lawful, and which consequently may be performed, unless that condition is performed, or its performance is waived by him, he cannot be held to make good his subscription." Again, on page 418, this statement is found: "If the condition is expressed on the face of the subscription agreement, and is valid under rules and theories already discussed, the obligation of the subscriber does not become binding until the condition has been performed by the corporation or waived by the subscriber; until that time he cannot be held to the liabilities of a shareholder. It is scarcely necessary to suggest that the corporation cannot elect to treat as unconditional a subscription which has been made upon a valid and expressed condition."

The general rule is that an unconditional subscription is a -[2, 3] continuing offer until the proposed corporation is

formed. It becomes irrevocable only when it has been acted upon. This, however, is necessary in order to bind the subscriber, and until the corporation is formed, he is at liberty at any time to withdraw. (*Deschamps* v. *Loiselle*, 50 Mont. 565, 148 Pac. 335.) When the subscription, as here, is made to take effect upon the fulfillment of a condition precedent, the condition must be fulfilled, or the offer is never binding, even though the corporation has been formed. On this subject Mr. Thompson says: "Many cases have held that a strict performance of the condition is necessary in order to entitle the corporation to recover. These holdings are governed largely by the particular wording of the contract of subscription. And where there is nothing to show a contrary intention, and the language of the subscription is plain, there is no reason why a strict compliance should not be required. This naturally follows as a minor proposition from the major premise, that a subscriber may attach any condition to his subscription which he sees fit, under the limitation that it is not contrary to law or against public policy, and is within the power of the corporation to perform. For a court to say that a subscriber might thus attach a whimsical condition to his subscription, and then to hold that there need not be a strict compliance on the part of the corporation, would be illogical and inconsistent." (Sec. 604.) This rule is supported by the following cases: *Martin* v. *Pensacola etc. Ry. Co.*, 8 Fla. 370, 73 Am. Dec. 713; *Midland City Hotel Co.* v. *Gibson*, 11 Ga. App. 829, 76 S. E. 600; *Chase* v. *Sycamore etc. Ry. Co.*, 38 Ill. 215; *Cravens* v. *Eagle Cotton Mills Co.*, 120 Ind. 6, 16 Am. St. Rep. 298, 21 N. E. 981; *Belfast etc. Ry. Co.* v. *Moore*, 60 Me. 561; *Morrow* v. *Nashville Iron etc. Co.*, 87 Tenn. 262, 10 Am. St. Rep. 658, 3 L. R. A. 37, 10 S. W. 495.

The evidence discloses that no committee was ever appointed [4] by authority of the subscribers, or made report to them. At the time the subscriptions were solicited, it was understood by the subscribers that the committee to be appointed was to inspect a mill similar to that proposed, situated at Absarokee,

in Stillwater county, and make report accordingly. The only attempt to fulfill this condition was the following: Mr. Frank Sanderson, who solicited the subscriptions from the defendant and others, C. W. Sanderson, John Epperson, Roy Stebbins and J. M. Brannon, all being subscribers, agreed among themselves, at the instance of W. W. Clarke, himself a subscriber and also interested in some official capacity in the Northwestern Mill Construction Company, to go to Absarokee and inspect the mill at that place. Mr. Clarke proposed to pay the expenses of all who would go. The first five took the lead in effecting the organization; Frank Sanderson becoming its president and C. M. Sanderson its secretary. They called up some of the subscribers by telephone, including the defendant. Some of them had no notice of any kind. The defendant testified: "The evening before the committee went, Mr. Sanderson called me up and asked me if I would like to go to Absarokee. He didn't say the committee. I said it was impossible for me to go. I asked him who was going. He said: 'I don't know any more than I think Mr. Roy Stebbins and Mr. Sansome.'" He declined to go. Later a meeting of those who went to Absarokee and some of the other subscribers was held at a schoolhouse near Yegen, at which this self-constituted committee made a formal report. Frank Sanderson testified as to what took place at that time as follows: "After we made the trip, there was a meeting of the subscribers held. I don't know the date of the meeting. It was held at Canyon Creek schoolhouse at a called meeting. The meeting was called just among ourselves. Told everybody we saw, and called up some on the phone, *etc.*, that there would be such a meeting there, and this committee would report at that meeting. The committee reported at that meeting. The report was favorable." The defendant was informed of this meeting, but did not attend, and did not know what was done. Concerning it he testified: "Mr. Sanderson told me of a meeting to be held at the Canyon Creek schoolhouse, at which this committee that went to Absarokee was to report. That was to be on a Saturday evening." Some

of the subscribers did not become such until after these occurrences had taken place. On November 17 Mr. Stebbins, who was acting as "secretary," sent written notices to all the subscribers, addressing them as stockholders of the plaintiff, that their first meeting would be held at the store of C. M. Sanderson, at Yegen, on December 6, for the purpose of "adopting by-laws for the said company." He asked for the proxies of those who did not care to attend the meeting in person. Defendant did not attend, nor did he send his proxy. The preliminary steps were taken to effect the organization of plaintiff, by the execution of the articles of incorporation and the selection of officers. On the same day defendant notified Stebbins by telephone that he canceled his subscription on the ground of misrepresentation. Later, in a conversation with Stebbins, he told him he had withdrawn his subscription. With reference to what occurred he testified: "I called up Roy Stebbins, and told him to cancel my subscription because of misrepresentations. I told him the change of location [of the mill] was one. That is not the only one I mentioned. I stated it was a misrepresentation all through, for I understood we were to be called together as subscribers to select the committee. The substance of my conversation with Stebbins at that time was something to that effect. In the course of our conversation Mr. Stebbins said he wasn't satisfied with the action they had taken. He said: 'I, for one, would have rather that they had called the subscribers together before doing anything.' And the next time I saw Mr. Stebbins, he said to me, 'Did I really mean I was pulling out?' and I said I did." The organization was completed by the filing of the articles on December 17.

It may be conceded that, if the defendant had by word or act assented to or ratified the proceedings of the self-constituted [5] committee, as by attending the meeting at the schoolhouse to hear its report, or by attending the subsequent meeting at Sanderson's store, and taking part, without objection, in the organization of the company, he would properly be held to have waived the right to insist that he had not been given an oppor-

tunity to exercise his option to annul his subscription. He was not bound, at his peril, however, to object to the proceedings of a committee of which he had not been informed, and in the selection of which he had taken no part. He had a right to understand that Frank Sanderson, Stebbins, and others, who had assumed the leadership in forwarding the enterprise, would give him notice, so that he might take part in the selection of the committee by whose favorable judgment he was to become bound. He was not consulted as to the propriety of the selection of the self-constituted committee. The information he received was that there was a committee, with an opportunity extended to him to join it, if he desired to do so. He was not bound by its action, unless he chose to be; and as he said no word nor performed any act from which it might reasonably be inferred that he intended to acquiesce in the action of the committee, the fulfillment of the condition of the contract was not waived by him. Therefore, under the rule of the authorities cited, he was at liberty to recall his subscription and thus avoid liability to pay it. Otherwise, he became bound, notwithstanding he never had an opportunity to exercise his option.

The notice of withdrawal by defendant was given to Stebbins after the adjournment of the meeting of December 6, at which C. M. Sanderson was named secretary of the plaintiff. Inas-**[6]** much as defendant never had an opportunity to exercise his option as contemplated in the contract, he was not under obligation to give notice to anyone, even though the corporation was thereafter fully organized. In any event, his notice to Stebbins was sufficient to indicate his purpose.

The judgment and order are reversed and the cause is remanded to the district court, with direction to enter judgment for the defendant.

*Reversed and remanded.*

MR. JUSTICE SANNER concurs.


MR. JUSTICE HOLLOWAY: I am unable to subscribe to the conclusion reached by the majority. Under the third de-

fense, defendant could avoid liability only in the event that the report of the committee was unfavorable. No such report was ever made. Though the committee which investigated the Absarokee plant was selected in the most informal manner, it nevertheless made an investigation and reported favorably. The defendant does not object to the personnel of the committee, does not contend that it was not fairly representative of the subscribers generally, and does not challenge the correctness of the report. If the report made truthfully stated the facts concerning the Absarokee plant, then defendant is not entitled to be heard to urge this defense, for, though an entirely different committee had been selected, and selected in the most solemn and formal manner imaginable, the report would necessarily have been the same.

Reduced to its ultimate analysis, then, defendant avoids responsibility solely on the ground that the committee was not selected in a formal manner. This he ought not to be permitted to do. Upon the theory of the case presented to the trial court, I think the correct conclusion was reached, and that the judgment should be affirmed.