## COLEMAN HOTEL CO. v. CRAWFORD.*
## (No. 7077.)

(Court of Civil Appeals of Texas. Austin. Feb. 2, 1927. Rehearing Denied Feb. 9, 1927.)

Corporations ⊜83—Before expenditure or obligation incurred, or application for charter, one can withdraw from subscription to stock of corporation to be formed.

Subscriber to stock of corporation to be thereafter organized can, before any money is expended, any obligation incurred, or charter applied for, withdraw his subscription on giving proper notice thereof, without consent of other subscribers.

Appeal from District Court, Coleman County; J. O. Woodward, Judge.

Action by the Coleman Hotel Company against J. M. Crawford. From judgment for defendant, plaintiff appeals. Affirmed.

Critz & Woodward, of Coleman, for appellant.

W. Marcus Weatherred and Dibrell & Snodgrass, all of Coleman, for appellee.

BAUGH, J. The question decisive of this appeal is whether or not one who has subscribed to the capital stock of a corporation, to be thereafter organized, can, before any money is expended, any obligation incurred, or charter applied for, withdraw his subscription upon giving proper notice of such withdrawal, without the consent of the other subscribers.

---

⊜➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted March 23, 1927.

The trial court held that such subscriber could and instructed a verdict in behalf of Crawford accordingly. Other questions are raised on this appeal, among them the question of a proper proof of Crawford's notice of withdrawal; but .we think the proof clearly shows that Crawford did withdraw his subscription before any obligations on behalf of the proposed corporation had been incurred, or any money expended, and long before 'a charter was applied for, and that he gave seasonable notice thereof to those in charge of promoting the corporation.

We have reached the conclusion that the trial court was correct. The text-writers and the courts of the various states are by no means harmonious on this question. For that reason we deem it well to discuss it. In Black on Rescission and Cancellation, vol. 2, p. 896, § 346, the rule is stated as follows:

"A subscription by a number of persons to the stock of a corporation to be thereafter formed by them constitutes, first, a contract between the subscribers themselves to become stockholders when the corporation is formed upon the conditions expressed in the agreement, and as such it is binding and irrevocable from the date of the subscription; and second, it is in the nature of a continuing offer to the proposed corporation, which, upon acceptance by it, becomes as to each subscriber a contract between him and the corporation. Consequently it is a rule that a subscriber for stock in a corporation organized or to be organized cannot withdraw his subscription and repudiate his liability upon it, in the absence of fraud or other ground for rescission, nor, after the acceptance of the subscription by the corporation, can the directors authorize it to be withdrawn, without the consent of all the other subscribers."

Numerous cases from several states are cited in support of this text, including Steely v. Texas Imp. Co., 55 Tex. Civ. App. 463, 119 S. W. 319. We shall discuss these cases later. Thompson on Corporations (2d Ed.) vol. 1, p. 617, § 514, quotes Beach's rule as follows:

"A subscription by a number of persons to stock of a corporation to be thereafter formed by them has in law a double character. First. It is a contract between the subscribers themselves to become stockholders without further act on their part, immediately upon the formation of the corporation. As such a contract it is binding and irrevocable from the date of the subscription (at least in the absence of fraud or mistake), unless canceled by consent of all the subscribers before acceptance by the corporation. Second. It is also in the nature of a continuing offer to the proposed corporation, which, upon acceptance by it after its formation, becomes as to each subscriber a contract between him and the corporation. Delivery of the subscription contract to the promoter of the corporation is a valid delivery, so that the subscription becomes eo instanti a binding contract. It is not the case of delivery of a writing to a third party to be held in escrow. Each succeeding subscriber executes this contract in the hands of the promoter upon the faith of the subscription of others preceding him and as a

completed contract. In the case of original subscriptions made for the purpose of effecting. the organization of the company, a subscriber becomes a stockholder only upon the performance of all the conditions precedent to corporate existence which may be required by the charter or general act of incorporation. Before the company enters upon its corporate existence, however, he may withdraw; and although he may have been active in persuading others to subscribe, he cannot be held liable for any part of his subscription; for subscriptions to the stock of a company to be formed in the future are not mutual promises between the subscribers themselves."

The text deduced by Thompson from the authorities as set forth in section 518 is as follows:

"From the nature of the subscription made prior to the organization of the corporation, under the general principles of law governing such contracts, it is obvious that it may be withdrawn by the subscriber at any time before acceptance or before the corporation is organized, as such a subscription is not deemed a mutual contract between the subscribers. This right to withdraw a subscription has been carried to the extent of holding that a subscriber to the capital stock of a proposed corporation may withdraw his subscription at any time before the association files its articles with the proper officer; and this right cannot be denied him, though he may have induced others to subscribe to the stock with him. So, such a subscriber may withdraw, though other persons have subscribed on the strength of his subscription."

14 Corpus Juris, § 783, announces the rule as follows:

"Since there is, prior to acceptance, no consideration or mutuality, as between the subscriber and the corporation, the general rule is that a subscription for stock which constitutes a mere offer to the corporation to be accepted by it, whether made before or after incorporation, or an offer to purchase stock, may, like any other offer to contract, be revoked or withdrawn at any time before the corporation is formed, or before the offer is accepted, so as to be no longer open to acceptance, if the fact of such revocation or withdrawal is communicated before acceptance."

In Cook on Corporations (6th Ed.) vol. 1, p. 443, § 167, the following text, based on authorities there cited, appears:

"A subscriber may withdraw from his subscription if the withdrawal is prior to incorporation. Notice of the withdrawal may be verbal, and may be given to the chief party in the enterprise, who afterwards is made president." ·.

In Fletcher's Encyclopedia on Corporations, vol. 2, p. 1225, § 563, a recent and extensive work on corporations, the following rule is summarized from numerous authorities:

"According to the weight of authority, a subscription may be withdrawn at any time before it is accepted by the corporation, whether made before or after the formation of the corporation, for the reason that until such acceptance there is no binding contract, because, until then,

there is no agreement and no mutuality of object, and hence no consideration, and, in the case of subscriptions made before the corporation is formed, for the additional reason that, until it is formed, the other contemplated party to the contract is not yet in existence; nor, where this rule obtains, is a subscriber deprived of the right to withdraw under such circumstances because other subscribers have acted upon the strength of his subscription, nor because he has induced others to subscribe.

· "A number of courts, however, have held that a subscription made prior to incorporation is a binding contract from the time when it is made, and hence that, in the absence of fraud or mistake, it cannot be revoked even before it has been accepted by the corporation unless with the consent of all the other subscribers."

Because of these conflicts we have examined at great length the decisions of numerous states on this question. The rule announced in Black on Rescission and Cancellation, and the first portion of that formulated by Beach, is almost in the exact language of the opinion of the Minnesota Supreme Court in Minneapolis Threshing Co. v. Davis (1889) 40 Minn. 110, 41 N. W. 1026, 3 L. R. A. 800, 12 Am. St. Rep. 701, followed by the Indiana Supreme Court in Gravens v. Eagle Cotton Mills Co., 120 Ind. 6, 21 N. E. 981, 16 Am. St. Rep. 298. These two cases appear to be the leading cases, and largely the ones on which the courts of some other states rely in holding that a subscriber cannot withdraw without the consent of all stockholders. In neither of these cases, however, was any revocation of the subscription made or attempted. The defense in each instance was that the subscriber had imposed upon his subscription a condition, not embodied in the written instrument, which he claimed had been violated. A review of the other cases cited in support of the text that such a subscription is irrevocable discloses that these expressions arise from a general discussion of the binding character of a subscription, where no action thereon was taken by the subscriber until after the corporation had been formed or had accepted his subscription.

On the other hand, the following cases disclose instances where, as in this case, the subscriber withdrew his subscription prior to incorporation, and so notified the promoters of the proposed corporation.

In Bryant's P. S. Mill Co. v. Felt, 87 Me. 237, 32 A. 888, 33 L. R. A. 593, 47 Am. St. Rep. 323, the Supreme Court of Maine expressly held that a subscriber may withdraw at any time prior to incorporation; that the subscribers signing a preliminary list pledging themselves to take stock is only an offer which may be withdrawn at any time before acceptance; and that acceptance cannot occur until the corporation is actually created. That it is only an offer, subject to withdrawal at any time before acceptance, is also expressly held in Hudson Real Estate Co. v. Tower, 156 Mass. 82, 30 N. E. 465, 32 Am. St. Rep. 434.

In Hudson Real Estate Co. v. Tower, 161 Mass. 10, 36 N. E. 680, 42 Am. St. Rep. 379, the Massachusetts court used the following language:

"If every one of the other subscribers should object, yet it is the right of a subscriber to withdraw before the corporation is formed. It is merely a question of giving due notice of his withdrawal. * * * The retraction has usually been made to the same persons to whom the application for shares was made."

In Muncy Traction Engine Co. v. Green, 143 Pa. 269, 13 A. 747, the defendant not only subscribed for stock in the proposed corporation, but was active in persuading others to subscribe. He withdrew his subscription before the charter was applied for, and the Supreme Court of Pennsylvania held that he was not liable for any part of it.

In Greenbrier Industrial Exposition v. Rodes, 37 W. Va. 738, 17 S. E. 305, the Court of Appeals of West Virginia, in an action by the corporation against a subscriber to recover the amount of his subscription, says:

"But, though one sign such preliminary agreement for the proposed incorporation, he may withdraw before the company has come into corporate existence, as such a subscription is not a mutual contract between the subscribers."

In Vermilion Sugar Co. v. Vallee, 134 La. 669, 64 So. 673, Ann. Cas. 1916A, 695, the Supreme Court of Louisiana, after discussing numerous authorities on this question, says:

"The decisions of the various courts of the states have not been uniform on the point; but the weight of authority and reason hold that a subscription list like the one signed by defendant is a promise on his part to subscribe for stock; and that he did not enter into an irrevocable contract with any one, and especially with the corporation not yet formed, which could not be revoked or withdrawn by him before the organization of the company."

In Wright Bros. v. Mer. & Pl. Packet Co., 104 Miss. 507, 61 So. 550, Ann. Cas. 1915C, 1111, the Supreme Court of Mississippi announces the rule that—

"In the absence of a special agreement to the contrary, supported by a valuable consideration, a subscription to the capital stock of a corporation, thereafter to be organized, is nothing more than an offer of a specific sum to the use of the corporation when it comes into existence, and therefore, under familiar principles of law, may be withdrawn at any time before the organization of the corporation. While there are authorities to the contrary, this view is in accord with the great weight thereof and of reason. * * *"

In Canyon Creek El. & Milling Co. v. Allison, 53 Mont. 604, 165 P. 753, the Montana Supreme Court says:

"The general rule is that an unconditional subscription is a continuing offer until the proposed corporation is formed. It becomes irrevocable only when it has been acted upon. This,

however, is necessary in order to bind the subscriber, and until the corporation is formed, he is at liberty at any time to withdraw."

The case of Lewis v. Hillsboro Roller-Mill Co. (Tex. Civ. App.) 23 S. W. 338, was very similar to the instant case in which the Dallas court reached the same conclusion we have reached. In that case that court holds:

"The signing of the subscription list was not a binding contract until there was an organization perfected, or some liability incurred by reason thereof."

The cases cited by appellant do not sustain its contention. Those authorities relate largely to efforts at cancellation of subscriptions after incorporation, and where no attempt at revocation was made prior to incorporation. The nearest analogy to the question here involved was raised in Steely v. Texas Improvement Co., 55 Tex. Civ. App. 463, 119 S. W. 319, but Judge Neill, after referring to the conflicting authorities, expressly declined to decide between the conflicts.

We think the trial court's action is sustained by the great weight of authority. Where the revocation is made before any obligations have been incurred, any money expended, or any application for charter is filed, and notice of same is given to the promoter or promoters who act as agents for all, we can see no good reason why such revocation should be denied.

Finding no error, the judgment of the trial court is affirmed.

Affirmed.

### On Motion for Rehearing.

In its motion for rehearing appellant insists that our opinion in this case is in conflict with the holding of the Supreme Court in Belton Compress Co. v. Saunders, 70 Tex. 699, 6 S. W. 134, and with the holdings of the Courts of Civil Appeals in Steely v. Texas Improvement Co., 55 Tex. Civ. App. 463, 119 S. W. 319, and Bohn v. Burton-Lingo Co., 175 S. W. 173.

We had already considered carefully all of these cases. In none of them was the question here raised involved. Quoted excerpts from these opinions might indicate a conflict, but on analysis none exists. We have already referred to the Steely Case in our opinion. In the Belton Compress Co. Case, after incorporation, Saunders refused to pay his subscription on the ground that at the time the charter was granted authorizing a capital stock of $100,000, all of said capital stock had not been subscribed. It appears that when about $34,000 had been subscribed the subscribers, including Saunders, met, elected officers, decided to incorporate at once, procured a charter, and proceeded to build the compress. No attempt was ever shown to have been made by him to withdraw his sub-

scription prior to incorporation. In Bohn v. Burton-Lingo Co., the question raised was whether or not a creditor could enforce as against a subscriber full payment of his subscription, where the subscriber had refused payment of his subscription after incorporation, on the ground of fraud by the promoters in procuring such subscription. In that case the question of cancellation after incorporation was involved, and the subscriber had not attempted to revoke the subscription prior to the incorporation.

It is manifest, therefore, that the question involved in this case was not raised in those cases, and any declarations in those opinions are not therefore applicable to the one vital question raised in the present case.

Appellant's motion is overruled.

Overruled.